IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA,**

**Plaintiff,**

v.                                                                    CASE NO. 18-1795 (GAG)

**ALBERTO VÁZQUEZ COLÓN, et al.,**

**Defendants.**

## OPINION AND ORDER

On September 14, 2010 PRASA entered into an agreement with Alumna Construction Corporation ("Alumna") for the construction of the Marisol Project located in Toa Baja, Puerto Rico. (Docket No. 86 ¶ 2). The Puerto Rico Aqueduct & Sewer Authority ("PRASA") currently holds the Final Retainage and contractual balance pursuant to the agreement signed with Alumna. Id. ¶ 4. Alumna's subcontractors have submitted claims against PRASA regarding amounts owed to them by Alumna in connection with the Marisol Project. Id. ¶ 6-7. In particular, the present case revolves around a claim by Travelers Casualty & Surety Company of America ("Travelers") against PRASA for money owed by Alumna in relation to the Marisol Project. (Docket No. 33, Amended Complaint). Travelers alleges that Alumna breached the indemnity agreement between the parties. Id. at 4. Furthermore, Travelers avers that since it has paid claims from Aluma's subcontractors, workers, materialmen and others in the Marisol Project, totaling the net amount of $301,143.62, it is entitled to and hereby does subrogate in the rights of said subcontractors, materialmen and others, thus, demands from PRASA the payment of said sum. Id. at 7.

**Civil No. 18-1795 (GAG)**

On July 30, 2019, co-defendant PRASA filed an Interpleader Counterclaim, Cross-Claim and Third-Party Complaint against Travelers, Alumna and other creditors of the latter (Docket No. 86). PRASA claims that while being ready to release the Final Retainage, counter defendants, cross-claim defendants, and third-party defendants posit that they have an interest in the funds owed on the Final Retainage account, under Article 1489 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31, § 4130. (Docket No. 86 ¶ 12). As a result, PRASA brings this motion for an interpleader action under Rule 22 of the Federal Rules of Civil Procedure, to determine which claimants are subject to the retainage funds. (Docket. No. 86 ¶ 13).

Before the Court is Travelers' Motion to Dismiss PRASA's Interpleader Counterclaim for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 147). Essentially, Travelers argues that PRASA's interpleader request must be dismissed because there is no adverse claim against the retainage fee and, therefore, the interpleader procedure is not necessary. Id. at 11. Furthermore, Travelers posits that the Governmental Claimants included (Docket No. 86, Exhibit 2) are not Article 1489 claimants and, as a result, do not enjoy Article 1489 benefits. Id. at 10; see also Docket No. 147-2.

After a careful review of the parties' submissions and pertinent law, the Court GRANTS Travelers' Motion to Dismiss at Docket No. 147.

### I.   Standard of Review

As courts of limited jurisdiction, federal courts must construe their jurisdictional grants narrowly. Destek Grp. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003). Consequently, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider

whatever evidence has been submitted, such as . . . depositions and exhibits." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); see also Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 132 (D.P.R. 2007). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6). Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); see also Torres, 523 F. Supp. 2d at 132.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Fed. R. Civ. P. 12(b)(6), Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), discussing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the Court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

**Civil No. 18-1795 (GAG)**

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ .P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**II.    Discussion**

The central issue in the present motion is whether defendants' claims are adverse to each other and, if so, whether the Court should allow an interpleader action. Travelers advances that there are no adverse claims under Article 1489 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 4130, because each time any Aluma subcontractor makes a claim against PRASA, the amount claimed is automatically deducted from the claims of other contractors' creditors. (Docket No. 147 at 4-5). Travelers argues that as a result, no other contractors' creditor, e.g. Aluma, can make a claim against the monies demanded by an Article 1489 claimant. Id. Travelers also avers that every time an Article 1489 claimant has put forward its respective claim, the amount of each claim was deducted from the final retainage that PRASA holds. (Docket No. 147 at 9). [1] Thus, Travelers alleges that there are no adverse claims that support an interpleader action. Id. [2] Conversely, PRASA, states that Government Claimants do have a right to the Final Retainage (Docket No. 161 at 2-3) and that under Article 9(j) of Act 230 of July 23, 1974, P.R. LAWS ANN. tit. 3, §283, no

---

[1] Additionally, Travelers avers that the Commonwealth's Department of Labor and Human Resources and the Department of the Treasury, the Municipality of Toa Baja, Colegio de Ingenieros y Agrimensores de Puerto Rico, and the State Insurance Fund Corporation (hereinafter, "Government Claimants") are not entitled to the Final Retainage under PRASA because they are general creditors to Aluma, not Article 1489 claimants. (Docket 147 at 11).

[2] Travelers also claims that Exhibit 2 claimants are not subject to Article 1489. Id. at 11.

payments may be made to a person that has any overdue debt with the Commonwealth of Puerto Rico. Id.

The Federal Civil Rules of Procedure allow for interpleader relief when a party "is or may be exposed to double or multiple liability." FED. R. CIV. P. 22. The rule states that when a party is in control of a contested property, the stakeholder "makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." Id. Additionally, an "interpleader is not available unless the defendants' claims are 'adverse' to each other." Hudson Sav. Bank v. Austin, 479 F.3d 102, 107 (1st Cir. 2007) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1705 (3d ed. 2001)).

A detailed assessment of Article 1489 is necessary to understand why an interpleader does not proceed in the present case. Article 1489 creates a "direct action" in favor of laborers and materialmen, which allows the subcontractor to recover from the project's owner for services and materials owed to them by the contractor. P.R. LAWS ANN. tit. 31, § 4130. "This direct nature of the action produces *the important effect of deducting the amount claimed by the laborer or materialmen from the claims of other creditors of the contractor*, since from the very moment the claim is made to the owner, the latter becomes the debtor of the contractors, laborers and materialmen." Federal Ins. Co. v. Constructora Maza, Inc., 500 F. Supp. 246, 249 (D.P.R. 1990) (emphasis added). Nevertheless, there are limits to said direct action. "Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought." Goss, Inc. v. Dycrex Const. & Co., S.E., 141 D.P.R. 342, (1996) (see also P.R. LAWS ANN. tit. 31, §

**Civil No. 18-1795 (GAG)**

4130). Moreover, once the claim is made "the owner of the work turns into the debtor of the workers and materialmen and is no longer the debtor of the contractor, to the point that the creditors of the contractor cannot share with the workers and materialmen in the sum owed by the owner." Id. (citing Amer. Surety Co. v. Superior Court, 97 D.P.R. 452, 1969 PR Sup. LEXIS 165 (1969)).

According to this reading of Article 1489, the same does not provide for diverse claims to surface because "[t]he special remedy provided by [it] is none other than that of facilitating the prompt payment of wages and materials, freeing workmen and materialmen from any ties with the execution of and compliance with the contract, and with the owner's acceptance of the work." R. Román & Cía. v. J. Negrón Crespo, Inc., 109 D.P.R. 26, 9 P.R. Offic. Trans. 57 (1979) (Associate Justice Diaz Cruz concurring in part). Article 1489 claimants credit, thus, is not "subject to the risks of the contractor's responsibilities for other reasons." Amer. Surety Co., 97 D.P.R. at 457. To interpret otherwise would "defeat the purpose of Article 1489 by holding the workmen and materialmen, who were not parties to the construction contract, liable for the contractor's performance deficiencies or his failure to pay." Román & Cía., 109 D.P.R. 26. "The penalties and sanctions imposed on the delinquent contractor would be satisfied with the workman's labor and the materialman's property." Id.

Whether or not Aluma has outstanding debts -with the overdue debt in favor of the Commonwealth of Puerto Rico- is hence irrelevant to Travelers' Article 1489 claim. "Under both the general common and commercial law and under Puerto Rican law, laborers and materialmen have rights to contract retainages which are superior to those of general creditors, even where such funds have been attached by the outside creditor first." Segovia Dev. Corp. v. Constructora Maza, Inc., 628 F.2d 724, 729 (1st Cir. 1980). As is the case here, the Governmental Claimants are not considered Article 1489 claimants, and as such, have no right or preference to a claim against the

Final Retainage.[3] When Travelers filed its Article 1489 claim, PRASA became Travelers' debtor and its credit is not subject to other considerations related to Aluma. Furthermore, when Travelers submitted its Article 1489 claim the amount was deducted from the claims of other creditors of the contractor. Consequently, there are no diverse claims in the present case and PRASA's Interpleader fails as a matter of law.

**I.      Conclusion**

For the foregoing reasons, the Court **GRANTS** Travelers' Motion to Dismiss the Interpleader Counterclaim at Docket No. 147.

**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of June, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[3] See also Amer. Surety Co., 97 D.P.R. at 457, explaining that prelation of credits was irrelevant to the case since the Commonwealth did not have access to it regardless of who claimed it first due to the fact it was not an Article 1489 claimant.