**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TRAVELERS CAS. & SUR. CO. OF AM., <br><br> Plaintiff, Counter Defendant, <br><br> v. <br><br> ALBERTO VÁZQUEZ COLÓN; HILDA PIÑEIRO CÁCERES; CARLOS GONZÁLEZ TORRES; IVETTE GÓMEZ DÍAZ; MIGUEL BERMÚDEZ CARMONA; ALUMA CONSTR. CORP.; VIEQUES CONCRETE MIX CORP.; INTER-ISLAND FERRY SYS. CORP.; VIEQUES F.O.& G INC., and; PUERTO RICO AQUEDUCTS AND SEWER AUTH.; et al., <br><br> Defendants, Cross Claimants, Counter Claimants, Cross Defendants. | CIVIL NO. 18-1795 (GAG) |

## MEMORANDUM ORDER

Currently before the Court is Puerto Rico Aqueduct and Sewer Authority's ("PRASA") motion in limine to strike the value of Aluma's[1] claim for loss of productivity from CPA Armando Suárez's expert opinion. (Docket No. 378). Generally, PRASA argues that the claim is based off an improper methodology and further unsupported by record evidence. Id. PRASA posits that the Modified Total Cost method cannot be used to calculate the value of Aluma's claim for loss of productivity because two necessary conditions have not been met: (1) there's no other reasonable

---

[1] Aluma Construction Corp., Alberto Vázquez Colón, Hilda Piñeiro Cáceres, Carlos González Torres, Ivette Gómez Díaz, Miguel Bermúdez Carmona, Vieques Concrete Mix Corp., Inter-Island Ferry System Corp., Vieques F.O. & G, Inc. (collectively, "Aluma").

**Civil No. 18-1795 (GAG)**

way to determine the damages and (2) Aluma's own inefficiency during construction needs to be estimated and distinguished from the costs of delays caused by others. (Docket Nos. 378 at 1-2; 13-16; 378-12 at 12, 16).

Before responding in opposition, Aluma first filed a motion to strike PRASA's motion in limine arguing that the same is a disguised dispositive motion identical in form to the motion for summary judgment. (Docket No. 403). Aluma argues that PRASA is attempting to dispose the claim for loss of productivity, which is not permissible as a motion in limine and is otherwise untimely as a motion for summary judgment. Id. at 2. Furthermore, Aluma explains that its initial calculation of damages for loss of productivity was subsumed in the June 18, 2014, Modified Total Cost claim and that was further developed by its economic expert, CPA Suárez. Id. Essentially, Aluma suggests that PRASA's argument is not that CPA Suárez's opinion is inadmissible but rather that Aluma "allegedly renounced certain rights and that Aluma accepted certain facts that would invalidate totally, or partially, the total cost claim which is one of the main claims, if not the main claim, presented by Aluma." (Docket No. 403 at 3).

PRASA replies that it is ludicrous to believe that the motion in limine is really a motion for summary judgment. (Docket No. 407 at 1). PRASA indicates that its request is limited to CPA Suárez's estimate of one of Aluma's claims—loss of productivity—because of improper methodology and that the Court should employ its gatekeeper function under FED. R. EVID. 702 (expert witness testimony) and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). (Docket No. 407 at 2-3). PRASA refers to two letters in the record that Aluma sent to it. (Docket Nos. 378-1; 378-2). In these letters, the loss of productivity claim was estimated using a method other than the Modified Total Cost method, thus confirming in Aluma's own words that PRASA's chosen methodology to calculate the loss of productivity claim is indeed improper. (Docket No. 407 at 4).

PRASA suggests that the originally named loss of productivity claim is now referred to as "Excess Direct Costs" and/or "Direct and Indirect Costs (Not Including Own Equipment)" in CPA Suárez's expert damages report and were instead calculated using a second method. Id. at 1. Since the Modified Total Cost method can only be employed when no other method is available, PRASA argues that Aluma's valuation for loss of productivity, "Excess Direct Costs," and "Direct and Indirect Costs (Not Including Own Equipment)" should be stricken because by Aluma's own admission another method could have been employed. Id. at 2. Furthermore, PRASA argues that Aluma's estimate of its own inefficiency of 2.5% is arbitrary and baseless. Id.

Aluma subsequently filed an opposition to PRASA's motion in limine. (Docket No. 408). Aluma explained that the initial loss of productivity claim, determined using the other method, was extremely limited and did not encompass the total "Excess Direct Costs" or "Direct and Indirect Costs (Not Including Own Equipment)" because it was only related to the productivity of labor. Id. at 3. Specifically, "labor" meant the amount of pipe that could be laid in a day when compared to another site. Id. at 2. Aluma avers that the "Excess Direct Costs" and "Direct and Indirect Costs (Not Including Own Equipment)" that appear in CPA Suárez's report encompasses the totality of the costs of the construction project, which could not be presented in another manner because of the plethora of different site conditions encountered and resulting loss of information. Id. at 3. Aluma indicates that the reason for the different approach was that the excess of different site conditions and related work stoppages made it impossible to accurately apportion the costs of the delays to the different actors and particular dates. Id. at 4. Aluma points to the Modified Total Cost claim, (Docket No. 378-3 at 3), where it explained that the chaos in the construction project prevented the proper acquisition and classification of data; thus, necessitating the use of the modified total cost method. (Docket No. 408 at 5).

## I. Applicable Law and Discussion

The Supreme Court in <u>Daubert</u> vested in trial judges a gatekeeper function, requiring the Court to make an independent determination that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. FED. R. EVID. 702 governs the admissibility of expert testimony. <u>Id.</u> The First Circuit has described the trial judge as the "gatekeeper" in applying FED. R. EVID. 702's admissibility criteria. <u>Gaydar v. Sociedad Instituto Gineco–Quirúrgico y Planificación Familiar</u>, 345 F.3d 15, 24 (1st Cir. 2003). Rule 702 "necessitates an inquiry into the methodology and the basis for an expert's opinion." <u>Samaan v. St. Joseph Hosp.</u>, 670 F.3d 21, 31 (1st Cir. 2012).

The <u>Daubert</u> inquiry is case-specific. <u>See</u> <u>Lawes v CSA Architects and Engineers LLP</u>, 963 F.3d 72, 99 (1st Cir. 2020). "Exactly what is involved in 'reliability' . . . 'must be tied to the facts of a particular case.'" <u>Milward v. Acuity Specialty Prods. Grp., Inc.</u>, 639 F.3d 11, 14–15 (1st Cir. 2011) (quoting <u>Beaudette v. Louisville Ladder, Inc.</u>, 462 F.3d 22, 25 (1st Cir. 2006)). "Adding to the complexity, 'there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under <u>Daubert</u>.'" <u>Lawes</u>, 963 F.3d at 99 (citing <u>United States v. Diaz</u>, 300 F.3d 66, 73 (1st Cir. 2002)). Importantly, "<u>Daubert</u> does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct"; instead, to satisfy <u>Daubert</u>'s objective, the proponent must show "that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." <u>Milward</u>, 639 F.3d at 15 (quoting <u>Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.</u>, 161 F.3d 77, 85 (1st Cir. 1998)); <u>see also</u> <u>Lawes</u>, 963 F.3d at 99. "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and *appropriate means of attacking shaky but admissible evidence*." <u>Daubert</u>, 509 U.S. at 596 (emphasis added).

In short, Daubert neither requires nor empowers the Court to determine which of several competing scientific theories has the best provenance. Ruiz-Troche, 161 F.3d at 85. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion. Id. Notwithstanding the deep dive that the Court often takes to adequately assess the reliability of expert methodology, the Court must stop short of weighing the evidence, evaluating credibility, or unnecessarily picking sides in a battle between experts. See Lawes, 963 F.3d at 98.

In the present case, the Court finds that Aluma's use of the Modified Total Cost method for the loss of productivity claim as well as the "Excess Direct Costs" and "Direct and Indirect Costs (Not Including Own Equipment)" are permissible under FED. R. EVID. 702 because CPA Suárez's conclusion was reached in a "scientifically sound and methodologically reliable fashion." Ruiz-Troche, 161 F.3d at 85. CPA Suárez based his expert opinion for the direct and indirect project costs based on Aluma's business ledger and adjusted according to audited financial statements. (Docket Nos. 408 at 4; 408-1 at 19-20). PRASA's argument that the Modified Total Cost method should not have been employed because another method was previously used to quantify the value of the loss of productivity fails because Daubert only requires the Court to assess whether the method employed was scientifically sound and methodologically reliable; not whether other methods could have been used. See Ruiz-Troche, 161 F.3d at 85 (stating that Daubert does not require the Court to determine which scientific theory has the best provenance). As to whether Aluma's 2.5% estimate of its own inefficiency is either arbitrary or baseless, this question ought to be resolved by a jury. See Milward, 639 F.3d at 22 ("Lack of certainty is not, for a qualified expert, the same thing as guesswork.") (quoting Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010)); Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988) ("When the factual underpinning of an

**Civil No. 18-1795 (GAG)**

expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury."); see also <u>Lawes</u>, 963 F.3d at 109.

## II. Conclusion

For the foregoing reasons, the Court **DENIES** PRASA's motion in limine at Docket No. 378 and **DENIES** Aluma's motion to strike at Docket No. 403.

**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of September 2021.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge
