UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| TRAVELERS CAS. & SUR. CO. OF A.M., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-1795-JAW |
| | ) | |
| ALBERTO VÁZQUEZ-COLON, et al. | ) | |
| | ) | |
| Defendants/Counterclaim Plaintiff. | ) | |

**ORDER ON MOTION FOR DISBURSEMENT OF FUNDS**

After the Court granted a surety's motion for reconsideration and allowed the surety to recover from monies deposited in the registry of the court not only the amounts the surety paid to laborers and materialmen but also costs and expenses the surety incurred, the surety filed a motion for disbursement of the funds. The remaining defendants now oppose disbursement of the funds, specifically disbursement of the surety's claimed attorney's and other professional fees. The Court reiterates its conclusion that the surety may recover monies deposited in the registry of the court for costs and expenses the surety incurred, including attorney's and other professional fees, because the Court concludes that the surety maintains UCC-1 guarantee protection and taxing authorities do not have priority over the surety. Finally, the Court concludes that the amount of the attorney's fees and the nature and amount of the other professional fees remain in dispute.

I.      **RELEVANT BACKGROUND AND PRIOR ORDERS**

   A.      **Background of the Dispute**

On September 10, 2010, the Puerto Rico Aqueduct and Sewer Authority (PRASA) and Aluma Construction Company (Aluma) entered into a contract titled "Agreement for the Rehabilitation and Completion of the Marisol, Kennedy, Vegas, and Camaselles Sanitary Sewer System, Sabana Seca Ward, Toa Baja, Puerto Rico. *Omnibus Opinion & Order* at 4 (ECF No. 440). The construction project is called the Toa Baja Project. *Am. Compl.* ¶ 21 (ECF No. 33). The owner of the construction project is PRASA, and the general contractor is Aluma. *Id.* Travelers Casualty and Surety Company (Travelers) entered into a General Agreement of Indemnity (GAI) in favor of Aluma and issued three separate payment and performance bonds to Aluma as Principal, securing its performance and fulfillment of three different construction contracts as well as payment for labor, materials, and equipment furnished for use in the performance of the Bonded Projects. *Am. Compl.* ¶ 21. Among the three Bonded Projects is the Toa Baja Project. *Id.*

On October 4, 2012, Alberto Vázquez Colón, Hilda Piñeiro Cáceres, Carlos González Torres, Evette Gómez Díaz, and Miguel Bermúdez Carmona (collectively Individual Indemnitors) subscribed to the GAI in favor of Travelers. *Id.* ¶ 18. On December 14, 2012, Aluma, Vieques Concrete Mix Corporation (Concrete), Inter-Island Ferry System Corporation (Inter-Island), Vieques F.O. & G., Inc. (F.O. & G.) (collectively Corporate Indemnitors) subscribed to the GAI and the Individual Indemnitors executed individual affidavits acknowledging their execution and commitment to the terms and conditions of the GAI. *Id.* ¶ 19. When the Corporate Indemnitors and the Individual Indemnitors failed to comply with their contractual

obligations, Travelers paid claims from Aluma's subcontractors, workers, materialmen, and others in the Toa Baja Project in the total net amount of $301,143.62. *Id.* ¶ 25. On October 22, 2018, Travelers filed suit against the Individual Indemnitors, Corporate Indemnitors, and PRASA for indemnification of the amounts Travelers expended pursuant to its obligations under the GAI. *Compl.* at 1-8. On February 14, 2019, Travelers filed an amended complaint. *Am. Compl.* (ECF No. 33) (*Am. Compl.*). In addition to its indemnity claims, Travelers asserted that it had paid claims from Aluma's subcontractors, workers, materialmen, and others in the Toa Baja Project in the total amount of $301,143.62 and that Travelers was, therefore, subrogated against the Puerto Rico Aqueducts and Sewer Authority (PRASA) in that amount. *Id.* ¶ 32.

### B.  Subsequent Developments

Travelers' straightforward claims against the owner of the construction project and the indemnifiers soon devolved into a complicated dispute among PRASA and Aluma, and the indemnifiers as to who was responsible for construction delays and cost overruns in the Toa Baja Project. *See Answer to the Am. Compl., Countercl. and Crosscl.* (ECF No. 36); *Am. Answer to the Am. Compl., Am. Countercl. and Crosscl.* (ECF No. 46); *Travelers Cas. and Sur. Co. of Am.'s Answer to the Am. Countercl.* (ECF No. 57); *Puerto Rico Aqueduct and Sewer Auth. Mot. to Dismiss Am. Crosscl.* (ECF No. 65); *Second Am. Answer to the Am. Compl., Second Am. Countercl., Second Am. Crosscl. and Third Party Compl.* (ECF No. 85); *Interpleader Countercl, Cross-Cl and*

*Third Party Compl.* (ECF No. 86) (*Interpleader Countercl, Crosscl. and Third Party Compl.*).  This led to extensive motion practice, legal argument, and delay.

### C.    Omnibus Opinion and Order

On September 15, 2021, then United States District Court Judge Gustavo A. Gelpí issued an extensive, fifty-three-page omnibus opinion and order, resolving most of the issues in the case.  *Omnibus Opinion & Order* (ECF No. 440) (*Omnibus Order*). In the order, Judge Gelpí denied PRASA's motion for summary judgment against Aluma, *id.* at 16, denied Aluma's motion for summary judgment against PRASA, *id.* at 29, granted in part and denied in part Travelers' motion for summary judgment against PRASA and the indemnitors, *id.* at 53, granted Travelers' motion for summary judgment against Aluma and dismissed Aluma's counterclaim, *id.* at 52, and dismissed as moot Travelers' alternative motion for summary judgment against Aluma.  *Id.* at 52-53.

In his order, Judge Gelpí concluded that Travelers "has priority over the Governmental Claimants as the second-in-line Article 1489 claimant for $175,199.70 from the remaining contract balance."  *Omnibus Order* at 45.  Judge Gelpí rejected Travelers' claim for an additional $51,824.58 of incurred costs because "Article 1489 claims are limited to the amount the owner may owe the laborers and materialmen when the action is brought," explaining that "Travelers may not obtain $51,824.58 from the remaining contract balance because Indemnitors owe Travelers for those costs under the GAI instead of PRASA under Article 1489."  *Id.* at 46.

### D.    Travelers' First Motion for Reconsideration and Denial

On September 22, 2021, Travelers filed a motion for reconsideration of the omnibus order and requested that the Court issue a judgment in its favor and order the disbursement of funds. *Travelers Cas. and Sur. Co. of Am.'s Mot. for Recons. of Omnibus Opinion & Order, Req. Entry of J. and for Disbursement of Funds* (ECF No. 445) (*First Mot. for Recons.*). On October 1, 2021, Judge Gelpí denied Travelers' motion for reconsideration. *Mem. Order* (ECF No. 450) (*Denial of First Mot. for Recons.*).

In its motion, Travelers asked Judge Gelpí not only to reconsider the part of his omnibus order that limited its claim to $175,199.70, but also to order the Clerk to distribute either the $175,199.70 or $227,143.90 ($175,199.70 + $51,944.20) from the funds PRASA had deposited with the Clerk of Court. *First Mot. for Recons.* at 6.

On October 1, 2021, Judge Gelpí issued a memorandum order, addressing Travelers' motion for reconsideration.[1] *Denial First Mot. for Recons.* at 1-7. Judge Gelpí disagreed with the part of the Travelers' claim that demanded the additional $51,824.58 because "Travelers' claim is limited to the amount that the owner (PRASA) may owe the laborers and materialmen when the action is brought." *Id.* at 3.

### E.    Travelers' Second Motion for Reconsideration and Order

On October 27, 2021, Travelers filed a motion for reconsideration of the order on its motion for reconsideration.[2] *Travelers Cas. and Sur. Co. of Am.'s Mot. for*

---

[1]    In his October 1, 2021 order, Judge Gelpí granted a motion to correct clerical error not at issue here. *Denial First Mot. for Recons.* at 4.

[2]    On November 3, 2021, before Judge Gelpí ruled on Travelers' second motion for reconsideration, he was appointed to the Court of Appeals for the First Circuit, and the case was

*Recons. of Mem. Order* (ECF No. 460) (*Second Mot. for Recons.*).   In this motion, Travelers argued that it maintained the right to collect its incurred costs because the deposited funds belong to PRASA, noting that once PRASA deposited the retainage with the Clerk, it relinquished any claim in the retainage, which now "belongs . . . to Aluma and its creditors." *Id.* at 2.   Travelers asserted that it is an Aluma creditor for the $51,824.58 it is owed from Aluma, *Second Mot. for Recons.* at 5, and urged the Court to certify the case under Federal Rule of Civil Procedure 54(b) so that the judgment will have the requisite aspects of finality. *Id.* at 6-9.

On September 27, 2022, this Court granted Travelers' motion for reconsideration.   *Order on Mot. for Recons., Mots. in Limine, and Remand to Puerto Rico Commonwealth Ct.* (ECF No. 476) (*Order*).   The Court reasoned that "absent a claim by PRASA for some or all the deposited amount, the corpus deposited in the Court is correctly viewed as money once retained by PRASA, the owner, and due Aluma, the general contractor, subject to the claims of Aluma's creditors." *Order* at 8 (citing *Federal Insurance Company v. Constructora Maza, Inc.*, 500 F. Supp. 246, 250 (D.P.R. 1979)).   The Court concluded that Travelers "demonstrated its entitlement to a total of $227,024.28 ($175,199.70 + $51,824.58) from the $368,368.93 retainage that PRASA held for the benefit of Aluma and deposited in the Clerk's Officer pursuant to Federal Rule of Civil Procedure 67." *Id.* at 9.

The Court additionally ordered Travelers to file a motion "complying fully with the withdrawal requirements of Federal Rule of Civil Procedure 67 and Local Rule

---

reassigned first to United States District Judge Jay Garcia-Gregory, *Mem. of Clerk* (ECF No. 462), and then on June 28, 2022, to this Judge.  *Order Reassigning Case* (ECF No. 471).

67," *id.* at 10, and "defer[ed] ruling on the Rule 54(b) relief Travelers request[ed]" because it "anticipate[d] resolving the jurisdictional issue in the relatively near future," noting that "[i]f the Court remands the remainder of the case, a final judgment will issue at that time." *Id.* at 12.

Finally, the Court ordered counsel for the remaining defendants to "address whether, if the Court decide[d] not to retain jurisdiction, the Court should remand the case to the commonwealth of Puerto Rico courts and, if so, which court, and whether the Court should dismiss the state claims without prejudice and allow the parties to reinitiate them in the state court of their choosing." *Id.* at 14-15.

On October 4, 2022, Travelers filed its motion for disbursement of funds. *Mot. for Disbursement of Funds* (ECF No. 477) (*Travelers' Mot.*). On October 28, 2022, Alberto Vazquez Colon, Hilda Piñeiro Cáceres, and their Conjugal Partnership, Carlos Gonzalez Torres, Ivette Gomez, and their Conjugal Partnership, Miguel Bermudez Carmona, Aluma Construction Corporation, and Vieques FO&G, Inc. (jointly "the appearing defendants") filed a memorandum in compliance with the Court's September 27, 2022 order, *Mot. in Compliance with Order* (ECF No. 485) (*Defs.' Mem.*), and an opposition to the request to withdraw funds. *Opp'n to Disbursement of Consigned Funds for Att'y Fees and/or Mot. for Recons.* (ECF No. 486) (*Defs.' Opp'n*). On the same day, PRASA filed its memorandum in compliance with the Court's order. *PRASA's Br. to Comply with Ct. Order at ECF No. 476* (ECF No. 487) (*PRASA's Mem.*). On November 11, 2022, Travelers filed its reply to the appearing defendants' opposition to disbursement of the funds for attorney's fees and

other professional fees. *Travelers' Reply to Indemnitors' Opp'n to Disbursement of Funds* (ECF No. 500) (*Travelers' Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Travelers' Motion for Disbursement of Funds

In its motion for disbursement of funds, Travelers requests $227,048.25 as the "[a]mount of payment to be issued" in line with the Court's September 27, 2022 order and in compliance with Federal Rule of Procedure 67 and Local Rule 67. *Travelers' Mot.* at 2.

### B.   The Appearing Defendants' Opposition to Disbursement of Funds for Attorney's Fees

The appearing defendants "oppose the disbursement of any money from the consigned Aluma's funds for the alleged attorney fees." *Defs.' Opp'n* at 1.  They submit that "the existing claims against said funds are protected by liens, product of local law, which grants said claims legal priority against all comers, including owners of contractual and/or legal liens, like Travelers used to be [before i]t lapsed after five years passed without renewal." *Id.*  They explain that "[a]ll of the funds are encumbered by state laws that protect, with the highest priority, the claimants against Aluma's consigned funds" because "Art. 1489 C.c., grants providers of labor and materials to the project first priority against said sum" and "the applicable law (Laws of P.R. Ann. 22 § 50) protects taxing authorities to the maximum extent except for special laws, like Art. 1489, which command an even higher level of priority." *Id.* at 2.

The appearing defendants contend that "of the available $368,368.93, Travelers gets $173, 561.46 for its Art. 1489 claims . . . [t]he other Art. 1489 claimants would be entitled to $111,624.67 . . . [n]ext in line is the Municipality of Toa Baja, that has a legal lien over the funds, in the amount of $84,769.14." *Id.* at 4. They further contend that the "sum of those three items is $369,955.27, which is more than the consigned amounts" and "there is still the Treasury Department and the Workman's Compensation, who also have priority over Travelers' claim, which total an additional $149,000.00 as of 2014." *Id.*

The appearing defendants conclude that "there is no valid way, pursuant to state law . . . to collect the amount claimed for fees and expenses from the deposited funds [because t]here is not one penny, in the consigned funds, that is not encumbered by an overriding legal lien in favor of some taxing authority." *Id.* at 4-5.

Finally, they submit that Travelers' claimed fees and expenses were not "properly alleged, particularized and properly evidenced," *id.* at 5, and request in the alternative "that the order to pay the fees be stayed, to give an opportunity to appeal the judgment to be entered, both as to the disbursement as to the amount or the finding of the obligation itself." *Id.* at 7. They further submit that "[s]uch stay would also be supported by Fed. R. Civ. P. 62(f), in as much as, under local law, judgments in general and money judgments in particular are not enforceable until the appellate course has been exhausted." *Id.* at 8-9.

## C.   Travelers' Reply in Support of Disbursement of Funds for Attorney's Fees

Travelers first argues that it remains protected under a valid UCC-1 guarantee agreement because it "filed its UCC-1 statement on August 14, 2013" and "[a]t that time, UCC-1 statements expired after a period of 10 years." *Travelers' Reply* at 1. Travelers submits that "the 2014 amendment is not retroactive and does not affect statements filed before the date of its enactment." *Id.* at 2.

Travelers then contends that the appearing defendants "mislead the Court when they argue that other Art. 1489 claimants would be entitled to $111,624.67." *Id.* (internal quotation marks omitted). Travelers explains "[i]t is the law of the case that only two Article 1489 claimants remain to be paid from the retainage . . . and their claims total $51,944.20 . . . [which] means that there is a total of $141,225.03 left to address the claims of Aluma's creditors." *Id.*

Travelers next argues that the appearing defendants "mislead the Court when they argue that taxing authorities have preference over Travelers to the retainage" because the Supreme Court of Puerto Rico has "effectively held that, by virtue of the assignments in [an] indemnity contract, [s]ureties [remain] in a preferred position over the Treasury Department as it pertain[s] to the funds deposited in court because [the s]ureties became the owners of the . . . funds on the date that the indemnity contract with the assignment clause was executed." *Id.* at 5 (citing *New Hampshire Ins. Co. v. Eng. Luis Garcia Passalacqua*, 206 P.R. Dec. 105 (2021)). Travelers submits that the "General Agreement of Indemnity (GAI) existing between Travelers and the Indemnitors defines Property," *id.* at 5, as "'Indemnitors rights, title and interest, whether now held or hereafter acquired in: (a) any Contract or contract,

including but not limited to subcontracts led; (b) any or all sums d[ue] or which may hereafter become d[ue] under any Contract or contract, and all damage claims and proceeds related thereto.'" *Id.* at 6 (quoting *id.*, Attach 3, *General Agreement of Indemnity* at 1 (ECF No. 500-3)).  Travelers concludes that "[a]pplying the Puerto Rico Supreme Court's holding in *New Hampshire* [*Insurance Company*] . . . the retainage became the patrimony of Travelers on October 4, 2012 [and s]ince it does not belong to Aluma, the taxing authorities have no claim to it."  *Id.*

Finally, Travelers argues that the appearing defendants "mislead the Court" when they: (1) "allege that the fees and expenses were not alleged," *id.* (internal quotation marks omitted); (2) "allege that they clearly objected the lack of a sufficient allegations regarding the proposed attorneys fees and cost payment," *id.* at 7 (internal quotation marks omitted); (3) "allege that Travelers did not prevail on the main issue in controversy," *id.* at 9, (internal quotation marks omitted); (4) "argue that the amount that the Court granted Travelers was the one which Aluma recognized and was reflected in C[hange] O[rder] L," *id.* at 10 (internal quotation marks omitted); and (5) "argue that closing the case would also damage Travelers."  *Id.* at 11 (internal quotation marks omitted).

Regarding its claim for attorney's fees, Travelers submits that "[i]n its first cause of action," it "specifically alleges that Indemnitors 'agreed to exonerate, indemnify and save Travelers harmless from and against all loss and expense of any kind or nature, including attorney's and other professional fees, which Travelers may incur in connection with the bonds or the GAI.'"  *Id.* at 7 (quoting *Compl.* at 6, ¶ 27).

Regarding the appearing defendants' request for more discovery, Travelers adds that the appearing defendants' "failure to conduct discovery was a conscious strategic decision . . . [and] there is no excuse for their failure to undertake appropriate discovery." *Id.* Travelers adds moreover that the appearing defendants "had a duty to file a motion and affidavit with the court explaining why they could not oppose Travelers' motion for summary judgment and requesting leave to perform discovery, specifically on the issue of attorney's fees and costs." *Id.* (citing FED. R. CIV. P. 56(d)).

As to the appearing defendants' argument that they objected to the lack of sufficient allegations regarding proposed attorney's fees, Travelers submits "the undisputed fact is that Indemnitors admitted the correctness of the amounts claimed for attorney's fees and costs." *Id.* at 8. Travelers explains how "[a]s required by [Local Rule] 56(b), Travelers submitted a statement of uncontested material facts in support of its motion for summary judgment . . . [and s]upporting fact #34 details Travelers' claim for incurred costs and expenses totaling $51,824.58 in attorney's fees and other professional fees . . . supported by an affidavit." *Id.* (citing *Mot. for Summ. J.*, Attach 1, *Statement of Uncontested Material Facts* at ¶ 34) (PSMF) (internal quotation marks omitted).

## III. DISCUSSION

### A. The UCC-1 Guarantee Agreement: Retroactivity

In 2014, Puerto Rico enacted an amendment making it such that UCC-1 filings expire after a period of five years rather than ten years, as had previously been the law. *Compare* P.R. Stat. Ann. Tit. 19, § 2335(a) (five years) *with id.* § 2153(2) (2008) (ten years). The commonwealth's 2014 amendment to § 2335, which clarified that the

effective period of financing statements was five years, does not contain a statement concerning retroactivity. *See* P.R. STAT. ANN. Tit. 19, § 2335.

The appearing defendants argue that Travelers does not have protection granted by the filing of a UCC-1 Guarantee Agreement because this guarantee "lapsed after five years passed without renewal" under the amended statute. *Defs.' Opp'n* at 1. Travelers contends that it does have UCC-1 guarantee protection because Travelers filed its UCC-1 statement on August 14, 2013, at which time "UCC-1 statements expired after a period of 10 years." *Travelers' Reply* at 1.

The First Circuit faced a nearly identical situation in *Altair Global Credit Opportunities Fund (A), LLC v. Puerto Rico AAA Portfolio Bond Fund, Inc. (In re The Financial Oversight & Management Board)*, 914 F.3d 694 (1st Cir. 2019). In *Altair*, the appellants submitted a 2008 financing statement and then submitted financing statement amendments in 2015 and 2016. *Id.* at 711-12. The opposing party argued "the Financing Statements could not later satisfy the requirements for perfection, by amendment, because the 2008 Financing Statements had lapsed by the time the Financing Statement Amendments were filed" because "[t]he Commonwealth's enactment of a revised Article 9 . . . shortened the effective time period of an initial financing statement from ten to five years." *Id.* at 712.

In *Altair*, the First Circuit held that the 2008 financing statements had not lapsed when the financing statement amendments were filed about seven and a half years later because the former ten-year, not the five-year, rule applied to the 2008 financing statements. *Id.* The First Circuit noted that the amended law "which

clarified that the effective time period of financing statements was five years, does not contain a statement concerning retroactivity" and reasoned that "as a textual matter, we would expect that a provision intended to apply retroactively to financing statements would directly mention [so], particularly given the Commonwealth's long-standing requirement that a law must 'expressly so decree' in order to have retroactive effect." *Id.* (quoting P.R. Laws Ann. Tit. 31, § 3). The First Circuit explained that "the general provision of the Commonwealth Civil Code . . . states that '[i]n no case shall the retroactive effect of a law operate to the prejudice of rights acquired under previous legislative action.'" *Id.* at 713 (quoting P.R. Laws Ann. Tit 31, § 3). The First Circuit further reasoned that although the P.R. Department of State Circular "does not have the force of law, it is informative on this issue," and the P.R. Department of State "considered the amendment to the time period 'for the life of an initial financing statement' and concluded that the decrease to five years 'cannot be retroactive.'" *Id.* at 712-13 (quoting P.R. Dept. of State, Circular 2014-01, *Clarifications on Term for Filing Continuing Financing Statements Based on Law 17-2014* (Jan. 24, 2014) (English trans.)).

Although here Travelers has not yet filed a financing statement amendment, the Court concludes that Travelers' August 14, 2013 financing statement is valid for ten years from the date of filing and thus does not expire until August 14, 2023. Travelers therefore maintains UCC-1 guarantee protection until that date.

The Court turns to whether the liens held by governmental taxing authorities, hold priority over Travelers' "preferred position" under its UCC-1 registered indemnity agreement.

## B.   Travelers' Rank in the Disbursement of Funds

The appearing defendants submit that "[t]he issue with Travelers' pretention is that it is a claimant with a lower ranked claim than the government agencies' competing ones and the funds are not sufficient to satisfy those higher ranked claims and/or liens." *Defs.' Opp'n* at 5.  Specifically, they allege that "Art. 1489 C.c., grants providers of labor and materials to the project first priority" and "the applicable law (Laws of P.R. Ann. 22 § 50) protects taxing authorities to the maximum extent except for special laws, like Art. 1489, which command an even higher level of priority."  *Id.* at 2.

### 1.   Article 1489 and the Remaining Claimants

Article 1489 provides: "Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought."  P.R. Laws Tit. 31, § 4130 (Civil Code, 1930, Art. 1489).  Neither the appearing defendants nor Travelers contends that Article 1489 is inapplicable here, and both parties agree that Article 1489 claimants take priority over Travelers' claimed attorney's fees.  Instead, they dispute the amount to be paid to remaining Article 1489 claimants from the retainage.  The appearing defendants submit that "other Art. 1489 claimants would be entitled to $111,624.67," *Defs.' Opp'n* at 4, while Travelers argues that only Juan

15

A. Arriaga and HLS Aggregate Transport remain to be paid a total of $51,994.20. *Travelers' Reply* at 2.

The appearing defendants cite PRASA's Counterclaim, Crossclaim, and Complaint to support their contention that the remaining Article 1489 claims total $111,624,67. *See Interpleader Countercl, Crosscl. and Third Party Compl.* at 3 ("The subcontractors' claims totaled $111,624.67 . . . [and] arise by virtue of Article 1489 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 4130, which provide for direct action from the contractor's subcontractors against the owner of the work up to the amount owed to the contractor") (citing *id.*, Attach 1, *Exhibit Aluma's Subcontractors Debt*).

In his September 15, 2021 Omnibus Order, Judge Gelpí reviewed the record and concluded "not all Article 1489 claimants have been paid in full because . . . Jaun A. Arriaga and . . . HLS Aggregate Transport have yet to be paid according to Change Order L." *Omnibus Order* at 42. Judge Gelpí noted that "according to PRASA's Senior Auxiliary Director of Administration and Finance," Juan A. Arriaga "filed its Article 1489 claim on July 29, 2013, for $6,800.00" and "HLS Aggregate Transport filed its Article 1489 claim on January 8, 2014, for $45,144.20." *Id.* (citing ECF No. 388-6 ¶¶ 21, 23). Judge Gelpí determined that in line with Change Order L, all other Article 1489 claimants had already been paid. *Id.* at 41-42. In its reply, Travelers acknowledges that Judge Gelpí's conclusions on this point are now "law of the case." *Travelers' Reply* at 2.

The Court concurs with Judge Gelpí and Travelers and concludes that the remaining Article 1489 claims from Juan A. Arriaga ($6,800.00) and HLS Aggregate

Transport ($45,144.20) total $51,994.20 and that Travelers is the "next-in-line Article 1489 clamant." *Omnibus Order* at 42. The Court turns to Travelers' rank as compared to government taxing authorities.

### 2. Priority of Government Taxing Authorities under Puerto Rico Law

Title 22, § 50 of the Laws of Puerto Rico provides in relevant part: "With the exception of any taxes which the contractor may owe to the Commonwealth of Puerto Rico, the salaries and wages earned by the workers and employees on the work shall have absolute preference with regard to payment over the rest of the debts of the contractor." 22 L.P.R.A. § 50. Article 1824 of the Civil Code more broadly provides: "With respect to all other personal and real property of the debtor," credits "in favor of the Commonwealth of Puerto Rico, the Municipal Revenue Collection Center, or the corresponding municipality, for the taxes of the last five (5) delinquent annual assessments and the current unpaid assessment which is not included in subsection (1) of § 5193 of this title" shall have preference. 31 L.P.R.A. § 5194. *See also* 3 L.P.R.A. § 283h(j) ("That if the natural or juridical person from whom an amount is to be withheld should be in debt with the Commonwealth of Puerto Rico and simultaneously with one or more municipalities, the debt to the Commonwealth shall be collected in the first place, and the others successively and strictly on the basis of their maturity dates, always collecting the earliest one first").

Although commonwealth law generally provides government taxing authorities with priority over non-Article 1489 claimants, this rule is not absolute. In *New Hampshire Insurance Company*, the Supreme Court of Puerto Rico faced a

similar scenario and held that the sureties had priority over the Treasury Department, a governmental taxing authority that had filed a claim for disbursement of taxes owed.[3] 206 P.R. Dec. 105.  The *New Hampshire* Court noted that the sureties were in a preferred position over the Treasury Department as it pertained to the funds deposited in the court because the sureties became the owner of the court-deposited funds on the date that the indemnity contract with the assignment clause was executed.  *Id.* at 125.  In other words, the Puerto Rico Supreme Court did not view Article 1489 with its statutory priority for government taxing authorities as the exclusive means by which a surety could claim the right to proceeds and the surety could also proceed pursuant to its contractual and subrogation rights, which would not necessarily incorporate the same government taxing authority priority.  *Id.* at 125-26.

The Puerto Rico Supreme Court explained how "[a] reading of the indemnity and surety contracts executed between [the sureties] and [the contractor], specifically clause 15(2) of the *General Contract of Indemnity*, clearly shows that [the contractor] agreed from the execution of the referenced contracts, the sureties would subrogate in all its rights, privileges, and properties," and "[w]ithout a doubt, pursuant to the norm and the case law discussed, and in accordance with what is provided in the aforementioned contracts, the disbursement of the amounts established in the sureties for the construction, materials and labor of several projects . . . caused the subrogation of [the sureties] in all the rights, remedies and money that [the

---

[3]      A certified translation of *New Hampshire Insurance Company*, 206 P.R. Dec. 105, can be found at *Travelers' Reply*, Attach 2 (ECF No. 500).

18

contractor] could possess by virtue of those construction contracts." *Id.* The Puerto Rico Supreme Court then concluded the "fact that [the sureties] had filed a collection of money action against the contractor—and that it was not filed by virtue of, for example, the direct action allowed by Art. 1489 of the Civil Code, 31 LPRA sec. 4130— does not suppress their rights pursuant to the bond contracts and the subrogation figure and assignment of credits." *Id.* at 125-26.

The Court finds *New Hampshire Insurance Company* highly instructive here. Here, the GAI assigns to the surety—Travelers—all of Aluma's rights, title, and interest in the bonded contracts and its payments from the execution of the contracts. *See General Agreement of Indemnity* at 1-2. The contract defines property as "'[i]ndemnitors rights, title and interest, whether now held or hereafter acquired in: (a) any Contract or contract, including but not limited to subcontracts led; (b) any or all sums d[ue] or which may hereafter become d[ue] under any Contract or contract, and all damage claims and proceeds related thereto" and then provides under remedies that "[i]n the event of a Default, Indemnitors assign, convey and transfer to Company all of their rights, title and interests in Property." *Id.*

It follows here, much like in *New Hampshire Insurance Company*, "the disbursement of the amounts established in the sureties for the construction, materials and labor . . . caused the subrogation of [the sureties] in all the rights, remedies and money that [the contractor] could possess by virtue of those construction contracts." *N.H. Ins. Co.*, 206 P.R. Dec. at 125. The Court thereby concludes that Travelers' rights pursuant to the bond contracts and the subrogation

figure and assignment of credits, including payment for attorney's and other professional fees, maintain a higher priority than claims made by government taxing authorities.

The Court turns to whether Travelers has properly alleged its claimed attorney's and other professional fees.

### C.    Attorney's Fees and Other Professional Fees

The appearing defendants argue that Travelers did not specify "in any version of the Complaint" its "claim for fees and/or other costs," *Defs.' Opp'n* at 12, that they "clearly objected" in their "Omnibus Opposition, Doc. 412, page 3, paragraphs 4-5," *id.* at 13, and that "no records or documents, of any kind, were provided to support fees or expenses." *Id.* at 16.  Travelers in turn argues that the appearing defendants "admitted the adequacy of the amount claimed by Travelers" when they failed to file a timely opposition to Travelers' claim in its motion for summary judgment, supported by an affidavit, of "incurred costs and expenses totaling $51,824.58 in attorney's fees and other professional fees." *Travelers' Reply* at 8 (internal quotation marks omitted).

Turning to the appearing defendants' first objection, namely that Travelers did not specify its claim for attorney's fees and other professional fees in the Complaint and Amended Complaint.  To the contrary, the Court notes that Travelers did allege in both its Complaint and Amended Complaint that the appearing defendants "agreed to exonerate, indemnify and save Travelers harmless from and against all loss and expense of any kind or nature, including attorney's and other professional

fees, which . . . Travelers [may] incur[] in connection with the Bonds or the GAI."
*Compl.* ¶¶ 27, 32; *see also Am. Compl.* ¶¶ 27, 32

Whether the amount of counsel fees remains a contested issue is more complicated. When it moved for summary judgment, Travelers alleged the specific sum of $51,824.58 for attorney's fees and other professional fees in its statement of uncontested material facts. PSMF ¶ 34. Paragraph 34 reads:

> Travelers has also incurred costs and expenses totaling $51,824.58 in attorney's fees and other professional fees in: (a) investigating the claims made by against the Bond by Aluma's subcontractors, workers, materialmen and others in the Toa Baja Project, (b) prosecuting and defending the present action, (c) obtaining releases from Aluma's subcontractors, workers, materialmen and others in the Toa Baja Project to which Travelers paid under the Bond, and (d) enforcing by litigation or otherwise the provisions of the GAI, such as attempting to collect payment from Indemnitors before this suit was filed.

*Id.* To support this paragraph, Travelers cited "Snyder Statement at par. 16." *Id.* According to his statement, Mr. Snyder is Bond Claim Executive at Travelers and in his sworn statement at paragraph 16, he recites the exact language set forth in PSMF ¶ 34.

On March 5, 2021, the Defendants filed their opposition to Travelers' motion for summary judgment. *Omnibus Opp'n to Travelers' Mot. for Summ. J. on Aluma's Second Am. Countercl. (Doc 387) and for Travelers' Mot. for J. on the Pleadings (Doc 375)* (ECF No. 412) (*Omnibus Opp'n*). In their response to PSMF ¶ 34, the Defendants wrote in relevant part:

> Statement of Uncontested Facts #34 is admitted part, denied in part and objected. It is admitted that Travelers incurred costs and expenses in attorney's fees and other professional fees . . . The amount itself is objected to since it was not included in the amounts requested in the

complaint, therefore Defendants did [not] have an opportunity to do discovery on the subject. *See Dkt. 27.* Since it was not included in the Complaint, said amounts were waived. *See Dkt. 27.* The alleged amount is also objected since no supporting documents are provided – best evidence rule. An unsworn statement by an officer is not a substitute to a detailed cost report with copies of the invoices allegedly paid or incurred.

*Omnibus Opp'n*, Attach. 1 *Opp'n to Travelers' Statement of Uncontested Facts* ¶ 34 (DRPSMF).

The next reference to Travelers' claim for attorney's fees and costs appears in Judge Gelpí's Omnibus Order. *Omnibus Order* at 45-46. Judge Gelpí recites Tim Snyder's assertions in his sworn declaration concerning attorney's fees and other professional fees. *Id.* at 45 ("Tim Snyder concludes that Travelers has also incurred costs totaling $51,824.58 in attorney's fees and other professional fees investigating the surety claims and prosecuting this action"). Judge Gelpí then discusses the attorney's fees and other professional fees claim and concludes that these fees are not recoverable as part of Travelers' Article 1489 claim. *Id.* at 46.

The Court agrees with the appearing defendants that they did not concede the amount of the attorney's and other professionals' fees in their response to Travelers' statement of material fact and that Judge Gelpí did not endorse the amount of the fees in his Omnibus Order. To the contrary, Judge Gelpí only concluded that the fees, whatever their amount, were not recoverable under Article 1489, a conclusion this Court concurred with, but decided that the fees would be recoverable as deposited funds consistent with *Federal Insurance Company v. Constructora Maza, Inc.*, 500 F. Supp. 246 (D.P.R. 1979). *Compare Omnibus Order* at 45-46, *with Order on Mot. for*

*Recons. Mots. in Limine, and Remand to Puerto Rico Commonwealth Ct.* at 6-9 (ECF

No. 476). Furthermore, the Court agrees with the appearing defendants that they

were not required to accept Mr. Snyder's conclusory statement about the fees without

backup evidence about the fees themselves. *See* Fed. R. Evid. 1002.

This leaves open for resolution the amount of attorney's fees and the nature

and amount of the other professional fees. To be clear, the Court is not revisiting its

determination that Travelers is entitled to recover attorney's and other professional

fees from the funds PRASA deposited with the Court. The language of the General

Agreement of Indemnity is especially clear on this point:

> **Loss** – All loss and expense of any kind or nature, <u>including attorneys'</u>
> <u>and other professional fees</u>, which Company incurs in connection with
> any Bond or this Agreement, including but not limited to all loss and
> expense incurred by reason of Company's: (a) making any investigation
> in connection with any Bond; (b) prosecuting or defending any action in
> connect with any Bond; (c) obtaining the release of any Bond; (d)
> recovering or attempting to recover Property in connection with any
> Bond or this Agreement; (e) enforcing by litigation otherwise any of the
> provisions of this Agreement; and (f) all interest accruing thereon at the
> maximum legal rate.

*Pl.'s Mot. for Summ. J.*, Attach. 3, *General Agreement of Indemnity* at 1 (ECF No.

244).

Unlike other aspects of this case, the amount of attorney's fees and the nature

and amount of the other professional fees do not appear particularly controversial.

The Court will allow counsel a short period to discuss this issue and advise the Court

how they wish to proceed to resolve it. The Court anticipates that counsel for

Travelers will provide counsel for the other appearing defendants with sufficient

information to allow them to determine whether the fees are contestable. If the

parties have a good faith disagreement as to whether the fees fit within the broad definition of recoverable fees under the General Agreement of Indemnity, counsel will advise the Court how they wish to resolve the disagreement. The Court will schedule a videoconference with counsel approximately two weeks after the date of this order to discuss how to resolve this remaining issue.

### D.    Request for Stay

Finally, the appearing defendants "request a stay on the matter of the disbursement, pending an appeal which is meritorious, whether or not the Court agrees with [their] arguments." *Defs.' Opp'n* at 9. First, the appearing Defendants' request is premature because the Court has not yet entered a judgment in this case.

Next, although the appearing defendants submit that "[s]uch stay would also be supported by [Federal Rule of Civil Procedure] 62(f), in as much as, under local law, judgements in general and money judgments in particular are not enforceable until the appellate course has been exhausted," *id.* at 9-10, they provide no caselaw from Puerto Rico or elsewhere to support this assertion.

Federal Rule of Civil Procedure 62 provides:

> **(f) Stay in Favor of a Judgment Debtor Under State Law.** If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give.

FED. R. CIV. P. 62(f). Because the appearing defendants cite no Puerto Rico law indicating that the commonwealth court would necessarily provide a stay of execution here, the Court finds there is no requirement under Rule 62(f) that the Court issue a stay here. Moreover, because the Court held that "the corpus deposited in the Court

is correctly viewed as money once retained by PRASA, the owner, and due Aluma, the general contractor, subject to the claims of Aluma's creditors," *Order* at 8, the retained monies are no longer the appearing defendants' "property," insofar as they are subject to Aluma's creditors, thus making Rule 62(f) inapplicable.  FED. R. CIV. P. 62(f).

The inapplicability of Rule 62(f) leaves the parties with remaining provisions of Rule 62, which provide for an automatic stay of thirty days after entry of judgment before a prevailing party may obtain a writ of execution.  FED. R. CIV. P. 62(a).  After that thirty-day period, the losing party may obtain a stay of execution only by filing a bond or other security with the court.  FED. R. CIV. P. 62(b); *see Rebarber-Ocasio v. Feliciano-Munóz*, Nos. 3:18-cv-01218-JAW, 3:16-cv-02719-JAW, 2022 U.S. Dist. LEXIS 230823, at *3-11 (D.P.R. Nov. 2, 2022).  The Court has not yet entered a final judgment and therefore the security requirements of Rule 62 have not yet come into play; however, once a judgment has issued, it will be incumbent upon the losing parties to provide an appeal bond satisfying the provisions of Rule 62 to prevent Travelers from obtaining an immediate execution allowing the disbursements of the amounts deposited under Rule 67 with the Court.

## IV.   SUMMARY

First, the Court accepts as law of the case Judge Gelpí's conclusion that there are two Article 1489 creditors—Juan A. Arriaga and HLS Aggregate Transport with a combined total claim of $51,944.20—who hold priority over Travelers' claim for attorney's and other professional fees, a conclusion Travelers does not dispute.

Second, the Court determines that Travelers with its UCC-1 guarantee has a higher priority claim to those funds than do governmental taxing authorities and Travelers is entitled to its claim in attorney's and other professional fees.  Based on the record, the Court concludes once more that Travelers has demonstrated its entitlement to a total of $175,199.70 as an Article 1489 creditor plus an amount to be determined in attorney's and other professional fees as a general Aluma creditor from the $368,368.93 retainage that PRASA held for the benefit of Aluma and deposited in the Clerk's Officer pursuant to Federal Rule of Civil Procedure 67.

## V.    OTHER PENDING MOTIONS

Several other motions are currently pending before this Court.  Because the Court has considered only the relevant portions of the contested briefing, the Court dismisses without prejudice the pending Motion to Quash Portions of PRASA's Brief to Comply with Court Order at ECF No. 476 (ECF No. 499) and Motion to Strike Portion of Cross-Claimant's Brief (ECF No. 506).

The Court likewise dismisses without prejudice the pending Motion in Compliance with Order (ECF No. 485) regarding remand to commonwealth court. Before the Court considers whether to retain jurisdiction or remand what is left of the case to commonwealth court, the Court must fully resolve Travelers' Rule 67 claim.  Given the Court's present order, there are factual issues in dispute regarding Travelers' claim that must be resolved before the Court can address the issue of retention or remand and therefore the motion to retain jurisdiction is not ripe.  The parties may refile the motion once the Court finally addresses Travelers' claims.

## VI.   CONCLUSION

The Court thereby GRANTS in part and DISMISSES without prejudice in part Travelers' motion for disbursement of funds (ECF No. 477).  The Court GRANTS so much of the Travelers' motion for disbursement of funds as requests a determination of the ranking of potential claimants for the PRASA funds deposited with the Court and DISMISSES without prejudice Travelers' claim for attorney's and other professional fees pending further resolution.

The Court DISMISSES without prejudice the following motions:

1) Motion to Quash Portions of PRASA's Brief to Comply with Court Order at ECF No. 476 (ECF No. 499);

2) Motion to Strike Portion of Cross-Claimant's Brief (ECF No. 506); and

3) Motion in Compliance with Order (ECF No. 485).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of January, 2023