UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

TRAVELERS CASUALTY & SURETY )
COMPANY OF AMERICA, )
　 )
　Plaintiff/Counterclaim Defendant, )
　 )
　　　　v. )　　　No. 3:18-cv-01795-JAW
　 )
ALBERTO VÁZQUEZ-COLON, et al., )
　 )
　Defendants/Counterclaim Plaintiffs. )

**ORDER ON ALUMA'S MOTION IN LIMINE TO EXCLUDE PRASA'S
FINANCIAL EXPERT**

In advance of trial, a crossclaim-plaintiff moves in limine to exclude specific portions of the expert report and testimony of an opposing party's financial expert on the grounds that his report contains impermissible legal conclusions and speculation. The court grants in part and dismisses in part the motion to exclude, concluding that certain objected-to statements constitute inadmissible legal conclusions.

I.    **BACKGROUND**

With trial looming, on March 7, 2025, Aluma Construction Corporation (Aluma) filed a motion in limine to exclude Rafael E. Rivera Rodriguez as Puerto Rico Aqueduct and Sewer Authority's (PRASA) financial expert or, in the alternative, to exclude select portions of his expert report and proffered testimony. *Mot. in Lim.* (ECF No. 641) (*Aluma's Mot.*). On March 14, 2025, PRASA filed its opposition to the disqualification of Mr. Rivera as an expert witness, claiming "Aluma's request is

baseless and must be denied." *Opp'n to Dkt 641 (Aluma's* Mot. in Lim. *Re: Expert Rafael Rivera)* at 1 (ECF No. 649) *(PRASA's Opp'n)*.

## II.    OVERVIEW

In 2012, Travelers Casualty & Surety Company of America (Travelers) issued a General Agreement of Indemnity in favor of Aluma and issued surety bonds, securing Aluma's performance and its fulfillment of three construction contracts in Puerto Rico. Travelers was required to pay on the surety bond, indemnified by corporate and individual indemnifiers, and this lawsuit is its attempt to collect from the indemnifiers its surety payment plus costs and expenses. Furthermore, Travelers asserted that it had paid claims from Aluma's subcontractors, workers, materialmen, and others and that Travelers was, therefore, subrogated against PRASA for that amount. Travelers' relatively straightforward claims against the owner of the construction project and the indemnifiers subsequently devolved into a complicated dispute among PRASA, Aluma, and the indemnifiers as to who was responsible for construction delays and costs.

Aluma and the other Defendants/Crossclaimants[1] seek damages for contractual torts, alleging they were induced into a construction contract that was

---

[1]    At the final pretrial conference, the Court asked about the status of several of the parties, who are listed as active parties on the docket but are not represented by counsel. The docket currently lists as Defendants/Crossclaimants: Alberto Vazquez-Colon, Hilda Pineiro-Caceres, Carlos Gonzalez-Torres, Ivette Gomez-Diaz, Miguel Bermudez-Carmona, Aluma Construction Corporation, Vieques Concrete Mix Corporation, Inter-Island Ferry System Corporation, Vieques F.O.&G. Inc., PRASA, Conjugal Partnership Vazquez-Pineiro, and Conjugal Partnership Gonzalez-Gomez. After some discussion, the parties suggested that some of the individuals and entities should no longer be parties to the case. The Court instructed the parties to file an update as to the status of all the parties, except for those represented at the final pretrial conference, by February 26, 2025. However, by the date of this order, the parties have not filed such an informative motion.

negligently designed and managed by PRASA.  In the alternative, Aluma seeks damages pursuant to the terms of the contract for unpaid costs and/or damages caused by the numerous change orders and different site conditions in the project site.  Chubb Insurance Company, the third-party defendant, is an insurer of PRASA. The only pending matter concerning Travelers is the imposition of attorney's fees and costs, and interest on the debt.

## III.    THE PARTIES' POSITIONS

### A.    Aluma's Motion in Limine

Aluma's motion in limine seeks to prevent PRASA's financial expert, Mr. Rivera, from testifying and to exclude Mr. Rivera's expert report "since [it] extends to areas in which Rivera is not an expert." *Aluma's Mot.* ¶¶ 19-20.  In the alternative, Aluma requests that the specific testimony and sections of the expert report that it takes issue with "not be presented to the Jury or considered by the Court." *Id.* ¶ 20.

Noting that it brings its motion pursuant to Federal Rule of Evidence 702, Aluma cites caselaw holding an "expert may be generally qualified but may lack qualifications to testify outside his area of expertise," *id.* ¶ 4 (quoting *Calhoun v. Yamaha Motor Cop., U.S.A.*, 350 F.3d 316, 322 (3rd Cir. 2003) (citation corrected)), and "a district court acts properly by excluding opinions that are beyond the witness's expertise." *Id.* ¶ 5 (quoting *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006)). Aluma also says an expert opinion "on questions of law 'is rarely admissible' because such testimony 'cannot properly assist the trier of fact.'" *Id.* ¶ 6 (quoting *Perham v. GlaxoSmithKline LLC*, 57 F.4th 327, 340 (1st Cir. 2023)).  Finally, Aluma maintains,

"[a] court may exclude an expert's opinion when it is 'based on conjecture or speculation from an insufficient evidentiary foundation.'"  *Id.* ¶ 7 (quoting *Willis v. Rio Mar Resort*, Civ. No.: 21-1515(FAB), 2023 U.S. Dist. LEXIS 161770, at *54 (D.P.R. Sept. 11, 2023) (citation corrected)).

Aluma then turns to the facts of this case, alleging that PRASA has introduced Mr. Rivera has a financial expert and he "prepared an expert report disputing the amounts of the losses suffered by Aluma as part of its contract to perform the Rehabilitation and Completion of the Marisol, Kennedy, Vegas and Camaselles Sanitary Sewer System."  *Id.* ¶ 8.  "The problem," Aluma proffers, "is that the Report gives analysis and reaches inadmissible conclusions of law" and also makes impermissible conclusions based on speculation.  *Id.* ¶¶ 9, 17 (first citing *Perham*, 57 F.4th at 340).

### 1.    Impermissible Legal Conclusions

First, Aluma argues that Mr. Rivera's report impermissibly includes legal conclusions.  Specifically, Aluma says Mr. Rivera's report asserts in several instances that Aluma's claims "shall be, in my opinion, ***totally dismissed***."  *Id.* ¶ 10 (citing *id.*, Attach. 1, *Expert Witness Rep. of Rafael E. Rivera Rodriguez, CPA, CFF, CVA, CFE* at 8, 21 (*Rivera Rep.*) (Aluma's emphasis).  Aluma further insists Mr. Rivera's expert report impermissibly "reaches a conclusion of law when it categorically states that Aluma '*accepted the price of the change order as fair and reasonable for all possible claims.*'"  *Id.* ¶ 11 (quoting *Rivera Rep.* at 40) (Aluma's emphasis).  On other occasions, Aluma says that Mr. Rivera "opines as to which section of the contract applies to the

facts of the case and to Aluma's claims." *Id.* ¶ 12 (citing *Rivera Rep.* at 40-41 ("[S]uch events are governed by Section 10.1.1 of the contract")). Aluma continues that Mr. Rivera impermissibly concludes that Aluma's claim for "*Extended Office Overhead . . . is not applicable in this court case.*" *Id.* ¶ 13 (quoting *Rivera Rep.* at 43) (Aluma's emphasis). Aluma similarly states Mr. Rivera's report draws legal conclusions when it (1) says "*[a] limitation imposed by Federal Courts on the recovery of consequential damage is damages sought must not be too remote or speculative,*" *id.* ¶ 14 (quoting *Rivera Rep.* at 52 (in turn quoting Common Sense Construction Law, John Wiley & Sons, Inc. (3d ed.))) (Aluma's emphasis); (2) draws "a legal conclusion as to accounting records," relying on a case Mr. Rivera identifies by name only, *id.* ¶ 15 (quoting *Rivera Rep.* at 53); and (3) "opines that the Modified Total Cost Method is not applicable to the case at hand," which Aluma insists "goes against this Court['s] prior ruling on the matter," and, further, is "the subject of a Second Motion in Limine," indicating this is "a legal question that the Court has entertained and ruled upon and not something that Rivera may testify []on." *Id.* ¶ 16 (citing *Rivera Rep.* at 49-57).

### 2. Impermissible Speculation

Second, Aluma argues "some assertions made in the Rivera Report also need to be excluded because they are based on speculations." *Id.* ¶ 17. Aluma specifically asserts that the report states "[t]his amount probably include[s] the legal fees associated with this legal case." *Id.* ¶ 17 (quoting *Rivera Rep.* at 47). Aluma next takes issue with the report's statement that "*[on] many occasions, Contractors incur an overdraft in their original cost estimates caused by quotation errors,*" and then

"lists three common errors," which it contends is "at best, a generalization and not a finding that Aluma committed any of the aforementioned errors." *Id.* ¶ 18 (quoting *Rivera Rep.* at 47) (Aluma's emphasis).  Aluma says the expert's report proceeds to state that "[a]ny of these errors result in cost overrun and apparently they occurred in this project." *Id.* (quoting *Rivera Rep.* at 47) (citation provided).  Aluma concludes that Mr. Rivera's report "is not making a finding that any of the errors occurred, it just assumes that they *may* have happened [and] [a]s such, the conclusions reached based on those speculative facts need to be stricken and may not be presented to the Jury." *Id.* (Aluma's emphasis).

Based on the foregoing, Aluma urges the Court to exclude Mr. Rivera's expert report and his testimony at trial or, in the alternative, to exclude the specific sections of the expert report with which Aluma has taken issue in its motion in limine.  *Id.* ¶¶ 19-20.

## B.    PRASA's Opposition

PRASA opposes Aluma's motion to disqualify its expert's report and testimony. After quoting extensively from *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, *see PRASA's Opp'n* at 1-4, and arguing that Mr. Rivera is "thoroughly qualified to present his opinions in this matter," PRASA maintains that Mr. Rivera's opinions are not, as Aluma suggests, "impermissible conclusions of law" nor impermissibly speculative.  *Id.* at 4-5.

PRASA contends Aluma incorrectly characterizes Mr. Rivera's conclusion that Aluma's claims warrant dismissal as an impermissible legal conclusion because "[i]n

pages 7-8 of his report, CPA Rivera presents his 'Executive Summary and Conclusion' where he explains . . . the reasons why he concludes Aluma is not entitled to any of the remedies claimed." *Id.* at 5. PRASA opines, "[o]bviously, if the Court and jury believe CPA Rivera's opinions, the inevitable consequence is dismissal of Aluma's Cross Claim [and] [i]n that sense, CPA Rivera is not expressing a 'legal opinion' but what he knows to be the end-result of a litigation where the movant . . . does not prevail." *Id.* at 5-6. Nonetheless, PRASA says it will not elicit testimony from Mr. Rivera "about whether the Cross Claim should be *dismissed* or not." *Id.* at 6 (PRASA's emphasis).

PRASA also rejects Aluma's contention that Mr. Rivera's statement regarding Aluma's acceptance of PRASA's price as fair compensation qualifies as an impermissible legal conclusion, insisting again that Aluma has taken this language out of context. *Id.* PRASA says, "[c]onsidering that CPA Rivera—as well as Aluma's financial expert—are reviewing the Contract between the parties and its supplementary documents to determine if Aluma is entitled to any additional compensation, any conclusion in that regard could be understood as 'legal.' However, they are clearly admissible as the opinions of an expert in accounting in construction projects" and "[i]f those opinions are inadmissible then, by the same token, the Court must exclude each and every opinion by CPA Iglesias where he concludes that the change orders did not adequately compensate Aluma." *Id.* PRASA makes the same contention regarding Aluma's argument of an impermissible legal conclusion in Mr.

Rivera's opinions regarding the applicability of the Contract's General Conditions provision.  *Id.* at 7.

As to Aluma's argument that Mr. Rivera's quotation of legal sources constitutes an impermissible conclusion of law, PRASA retorts, first, that "Aluma's expert does the same thing," and, second, "the quotation Aluma objects to is such a basic methodology rule that any expert which fails to follow it must be stricken from a case." *Id.*

As to Aluma's argument that PRASA's expert report contains speculative assertions, PRASA responds that the alleged speculation as to whether the claimed $147,376 for professional services expenses "probably includes the legal fees associated with this case," "is the result of Aluma's failure to produce documents that were requested during this litigation, as clearly mentioned in p. 46 of [Mr. Rivera's] report." *Id.* (citing *Rivera Rep.* at 46).  It retorts that this is not speculative, but the expert's reasonable opinion based on his experience and the available information, as provided to him by Aluma.  *Id.* at 8.

PRASA also rejects Aluma's argument that Mr. Rivera's statement addressing the possibility that quotation errors result in cost overrun amounts to impermissible speculation, insisting "CPA Rivera's assessment is based on the initial cost projection for the Project" and his over twenty years of experience handling contractor claims. *Id.*  Insofar as Aluma disagrees with Mr. Rivera's expert opinions, PRASA says, "it certainly has the right to timely object to this portion of his testimony during trial" and "it is reasonable to expect that CPA Rivera will be the subject of rigorous cross-

examination by Aluma, who will have the opportunity to fully delve into this matter."

*Id.* at 8-9.

## IV.  LEGAL STANDARD

The admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702 and by the United States Supreme Court in *Daubert* and its progeny.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The First Circuit has "long entrusted federal trial judges to be 'gate-keeper[s],' empowered by Rule 702 and *Daubert* to 'ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597). "[T]he overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with speculative expert testimony often satisfying neither criterion.  *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595); *see also Boucher v. U.S. Suzuki Motor*

*Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion").

In general, "[e]xpert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and if the proposed witness is qualified as an expert by some specialized 'knowledge, skill, experience, training, or education.'" *Liberty Mut. Ins. Co. v. Broan-NuTone LLC*, No. 21-cv-11986-DLC, 2024 U.S. Dist. LEXIS 76408, at *5-6 (D. Mass. Apr. 26, 2024) (quoting *Daubert*, 509 U.S. at 588).

The Advisory Committee on the Rules of Evidence (the Committee) amended Federal Rule of Evidence 702 in 2023, explaining: "[f]irst, the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."[2] FED. R. EVID. 702 advisory committee's note to 2023 amendment. The Committee cited Federal

---

[2]    In 2023, Federal Rule of Evidence 702 was amended as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise <u>if the proponent demonstrates to the court that it is more likely than not that</u>:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

FED. R. EVID. 702, 2023 amends.

Rule of Evidence 104(a) to explain "[t]his is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.* The Committee concluded that "[n]othing in the amendment imposes any new, specific procedures. Rather, the amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702." *Id.*

## V.    DISCUSSION

Aluma asserts specific portions of Mr. Rivera's report and testimony are inadmissible because the report, first, provides impermissible legal conclusions, and, second, offers speculative assertions. Although the motion in limine does not cite the canonical case, based on the nature of its requested exclusion the Court construes Aluma's motion in limine as raising a *Daubert* challenge.

### A.    Speculative Conclusions

First, although Aluma objects to Mr. Rivera's opinions in this case, it has not questioned his qualifications as a financial expert. This is wise. Mr. Rivera holds multiple degrees and professional qualifications and has several decades of experience relevant to this case. *PRASA's Opp'n* at 4-5. Instead, Aluma argues that several of Mr. Rivera's assertions are too speculative to assist the trier of fact. It specifically takes issue with two such statements:

1. "This amount probably include[s] the legal fees associated with this legal case." *Aluma's Mot.* ¶ 17 (quoting *Rivera Rep.* at 47).

2. "[On] many occasions, Contractors incur an overdraft in their original cost estimates caused by quotation errors . . .. Any of these errors result in cost overrun and apparently they occurred in this project." *Aluma's Mot.* ¶ 18 (quoting *Rivera Rep.* at 47) (emphasis removed).

As to the first statement, Aluma simply says it is "based on speculations." *Aluma's Mot.* ¶ 17. Aluma takes issue with the second statement because Mr. Rivera's report "is not making a finding that any of the errors occurred, it just assumes that they <u>may</u> have happened [and] [a]s such, the conclusions reached based on those speculative facts need to be stricken and may not be presented to the Jury." *Id.* ¶ 18 (Aluma's emphasis). Aluma does not contend that the supposedly speculative language in these statements makes Mr. Rivera's expert testimony, or his report, unreliable. It simply challenges these two opinions based on its position that an expert's speculative conclusions warrant per se exclusion. PRASA rejects this argument. *PRASA's Opp'n* at 7-8.

By the Court's reckoning, Aluma's argument does not successfully challenge the expert report as inadmissible under the lens of *Daubert*. "There is an important difference between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Martinez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022) (quoting *Milward v. Acuity Specialty Prods. Grp., Inc. (Milward I)*, 693 F.3d 11, 22 (1st Cir. 2011)). "That 'the factual underpinning of an expert's opinion is weak' is 'a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury." *Id.* (quoting *Milward I*, 639 F.2d at 22 (in turn

quoting *Vargas*, 471 F.3d at 264)).  The First Circuit has further held that "Rule 702 has been interpreted liberally in favor of the admission of expert testimony."  *Id.* (quoting *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006)).

Here, Aluma does not dispute that Mr. Rivera's report meets the requisite "threshold of reliability," and therefore the Court determines it "should be tested by the adversary process[—by] competing expert testimony and cross-examination[—]rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."  *Aponte v. Doctor's Ctr. Hosp.*, Civ. No. 18-1950 (CVR), 2021 U.S. Dist. LEXIS 232102, at *9 (D.P.R. Nov. 30, 2021) (quoting *United States v. Perocier*, 269 F.R.D. 103, 107 (D.P.R. 2009)); *accord Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").  As PRASA invites, Aluma has a right to argue at trial that Mr. Rivera's speculative statements undermine his conclusions—but this is an argument that goes to the weight of the expert's statements, not their admissibility.  *PRASA's Opp'n* at 8-9.

### B.    Inadmissible Legal Conclusions

Aluma argues further that Mr. Rivera's expert report "issue[s] conclusions in areas above and beyond the scope of [his] expertise," and quotes caselaw from the First Circuit holding that "a district court acts properly by excluding opinions that are beyond the witness's expertise."  *Aluma's Mot.* ¶¶ 2, 5 (quoting *Levin*, 459 F.3d at 78).  However, Aluma does not expand upon this argument by clarifying why it

believes, in Mr. Rivera's case, that the expert report contains "conclusions in areas above and beyond the scope of [his] expertise." *Id.* ¶ 2. Instead, it quotes the First Circuit as holding that expert opinion "on questions of law 'is rarely admissible' because such testimony 'cannot properly assist the trier of fact,'" *id.* ¶ 6, and proceeds to quote seven statements from the report under the title "impermissible conclusions of law." *See id.* ¶¶ 9-16. Without clarification from Aluma, the Court interprets its argument to be that these seven statements warrant exclusion because they put forward impermissible legal conclusions.

As an initial matter, Aluma is correct in general principle that "[a]n expert's testimony is considered unhelpful to the trier of fact when an expert opines on a 'pure question of law.'" *Party Book Hill Park, LLC v. Travelers Prop. Cas. Co.*, 2024 U.S. Dist. LEXIS 220423, at *29 (D.P.R. Dec. 4, 2024) (quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997)). The Federal Rules of Evidence allow an expert witness "to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it[,]" however, "it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue." *Nieves-Villanueva*, 133 F.3d at 100. The First Circuit acknowledged in *Nieves* that "what is law and what is application or practice may be difficult to ascertain." *Id.* However, when an expert witness purports to "draw ultimate legal conclusions," then their testimony cannot be considered to "properly assist the terrier of fact" because the testimony has "invad[ed] the province of the jury." *Carballo Rodriguez v. Clark Equip. Co.,* 147 F.Supp.2d 81, 85 (D.P.R. 2001).

14

The Court addresses each of the disputed seven statements in turn.

1. "Aluma['s] claim . . . shall be, in my opinion, totally dismissed." *Rivera Rep.* at 8.

The Court reviewed this page of the expert's report. In full, the disputed sentence reads: "In our opinion, the value of Aluma['s] claim in this court case is $0 and the allegations and amounts claimed as damages shall be, in my opinion, totally dismissed." *Rivera Rep.* at 8. The question for the Court is whether the disputed portion of this statement offers a factual conclusion, which is permitted, or a legal conclusion, which is not. *Compare Nieves-Villanueva*, 133 F.3d at 100 *with Carballo Rodriguez*, 147 F.Supp.2d at 85. Although "what is law and what is application or practice may be difficult to ascertain," *Nieves-Villanueva*, 133 F.3d at 100, this is not such an occasion. The Court agrees with Aluma that Mr. Rivera's statement, even qualified as his opinion, that "the allegations and amounts claimed as damages [by Aluma] shall be . . . totally dismissed" is an impermissible legal conclusion and orders it excluded from the expert report and Mr. Rivera prohibited from testifying as such at trial. *Rivera Rep.* at 8. Further, the Court notes that although PRASA resists Aluma's argument, it agrees to not solicit testimony on this point at trial. *PRASA's Opp'n* at 6. This Court hardens PRASA's agreement into an order. Mr. Rivera shall not testify that Aluma's claim for damages must be totally or partially dismissed.

2. "[Aluma] accepted the price of the change order as fair and reasonable for all possible claims." *Rivera Rep.* at 40.

The full paragraph states:

15

> During the course of my investigation, and while examining the change orders, the Contractor did not specify the items in which he did not agree to the negotiated prices and the cost elements compensated in each, except on certain change orders.  Therefore, he accepted the price of the change order as fair and reasonable for all possible claims.

*Id.*  By the Court's read, this is one such statement described by the First Circuit in which "what is law and what is application or practice may be difficult to ascertain." *Nieves-Villanueva*, 133 F.3d at 100.   Indeed, it is a factual conclusion that "the Contractor did not specify the items in which he did not agree to the negotiated prices and the cost elements compensated in each, except on certain change orders." *Rivera Rep.* at 40.   The disputed portion of the statement, however, comes next: "Therefore, he accepted the price of the change order as fair and reasonable for all possible claims."   *Id.*   The Court cannot tell from this paragraph whether Mr. Rivera is concluding that, by not specifying which items the Contractor did not contest, the Contractor acted in such a way so as to legally bind him to "accept[] the price change order as fair and reasonable for all possible claims."   *Id.*   That would very likely be an impermissible legal conclusion.  However, this section of Mr. Rivera's expert report can also be read as conveying the factual conclusion that the Contractor did in fact "accept[] the price of the change order as fair and reasonable for all possible claims." This is the interpretation PRASA presses in its opposition.  *PRASA's Opp'n* at 6.

Given the varying permissible interpretations of this same language, it strikes the Court that the best approach is to allow Aluma to press this point on cross-examination, if desired and warranted, at trial.  Thus, the Court declines to order this statement stricken from Mr. Rivera's report, or to exclude Mr. Rivera's testimony on this point wholesale at trial.

3. "[S]uch events are governed by Section 10.1.1 of the contract." *Rivera Rep.*

at 40.

In full, this objected-to sentence of the report reads:

The terms of change orders signed and agreed to between the parties are covered by the general conditions of the contract that establish that whenever a change order is required, for reasons of field conditions other than those anticipated, such events are governed by Section 10.1.1 of the contract which establish that within the final agreed prices are all the compensation elements to which the Contractor is entitled including 'overhead', costs and profits.

*Id.* Given that the scope of the contract's coverage is the essential issue in dispute in this case, it follows that an expert's conclusory statements regarding the meaning of certain contract provisions are legal and impermissible. "[I]t is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue." *Nieves-Villanueva*, 133 F.3d at 100.

That said, it strikes the Court as factual questions whether Section 10.1.1 governs change orders generally and what prices are included in that provision in this case. The Court thus declines to order this section stricken from the report, or to prevent Mr. Rivera's testimony on this point wholesale, again concluding the better approach is to allow Aluma to raise any objection at trial or press this point on cross-examination, if and when it is warranted. *Aponte*, 2021 U.S. Dist. LEXIS 232102, at *9 (expert testimony reaching a "threshold of reliability" "should be tested by the adversary process[—by] competing expert testimony and cross-examination[—]rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies").

4. "Extended Office Overhead . . .. is not applicable in this court case." *Rivera*

    *Rep.* at 43.

The paragraph from which this disputed statement comes reads, in full:

Aluma is claiming Extended Office Overhead. This item of damages is not applicable in this court case. There are two main reasons for which this type of claim is wrong. First, the Contract Terms clearly state that the only compensation for Contractor's overhead provided by the Contract was the one included within the Contractor's fee of 15%. Such fee was compensated to Aluma when [it] agreed with PRASA [] [to] 12 change orders with a total value of $2,014,881.45. The price of each order included contractor costs for extended time plus all direct costs including profit and overhead. Accordingly, the value of this type of claim is $0.00. Second, the way CPA Suarez calculated this item is not in accordance with accepted principles of proving damages relating to extended overhead.

*Id.*

The Court again finds the First Circuit's caveat in *Nieves* apt with regard to this statement. *Nieves-Villanueva*, 133 F.3d at 100 ("what is law and what is application or practice may be difficult to ascertain"). As explained above, contract interpretation is at the core of this dispute and a financial expert's opinions regarding how that contract should be interpreted may be legal conclusions. However, it is also true that disputed contracts contain facts: it is a factual statement, for example, that a contract does or does not contain a specific provision.

The touchstone for admissibility is whether Mr. Rivera's expert opinion would prove helpful to the jury in arriving at its verdict on liability and, if necessary, damages. *Liberty Mut.*, 2024 U.S. Dist. LEXIS 76408, at *5-6 (explaining that the test is whether the expert's specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue). Assuming a jury will not

know how Extended Office Overhead clauses are interpreted in the construction field, Mr. Rivera's description of their standard interpretation and proper application to this case would, in the Court's view, be helpful to the jury. Of course, as discussed above, Mr. Rivera's opinions would be subject to cross-examination, the presentation of countervailing expert opinion, and argument of counsel. But the Court disagrees with Aluma that this is a ground for the wholesale exclusion of the proffered expert testimony and declines to grant the motion in limine as to this statement.

5. "A limitation imposed by Federal Courts on the recovery of consequential damage is that damages sought must not be too remote or speculative." *Rivera Rep.* at 52.

Although a recognized legal standard could conceivably be a factual statement, the Court concludes this is a legal conclusion. The Federal Rules of Evidence allow an expert witness "to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it[,]" however, "it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue." *Nieves-Villanueva*, 133 F.3d at 100. The Court concludes Mr. Rivera's statement as to the applicable legal standard for establishing a claim for consequential damages has invaded the role of the Court and orders this statement stricken and Mr. Rivera's testimony on this point prohibited. This does not mean that Mr. Rivera may not opine that some of the evidence in this case is speculative. But it does mean that he may not inform the jury how federal courts, including this Court, treat speculative evidence.

6. Aluma describes, rather than quotes, the disputed sixth statement: "Rivera cites *Ray D. Lowder, Inc. v. North Carolina State Highway Commission* (with no case number or complete citation) in order to reach a legal conclusion as to accounting records." *Aluma's Mot.* ¶ 15 (citing *Rivera Rep.* at 53) (Aluma's emphasis).

The Court reviewed this sentence, which reads: "The importance of having detailed and reliable accounting records that must be presented to a Court to justify its economic damages was illustrated in the case of Ray D. Lowder, Inc. v. North Carolina State Highway Commission (Lowder)." *Rivera Rep.* at 53. Whether a particular record is "detailed and reliable" may well be a factual conclusion; however, the Court agrees with Aluma that it is an impermissible legal conclusion for an expert to opine as to, first, the legal standard for "justify[ing] . . . [a claim of] economic damages," and, second, "[t]he importance of having detailed and reliable accounting records" in order to meet this showing. *See id.* It is not within Mr. Rivera's expertise to analyze caselaw, and his reference to a court case may effectively be seen by the jury as an instruction of law, a role consigned solely to the presiding judge. This order does not prevent Mr. Rivera from saying to the jury that in his view it is important for the parties to a contract to maintain detailed and reliable accounting records, an observation that seems close to a universal truth, but it does prevent him from citing any such case as authority for his opinions.

7. Aluma describes the seventh disputed statement as: "the Rivera Report opines that the Modified Total Cost Method is not applicable to the cast at

hand.  That conclusion goes against this Court['s] prior ruling on the matter.  Moreover, it will surely be the subject of a second Motion in Limine to be filed concurrently by PRASA and over which the Court will rule upon once again.  In other words, it is a legal question that the Court has entertained and ruled upon and not something that Rivera may testify upon." *Aluma's Mot.* ¶ 16 (citing *Rivera Rep.* at 49-57).

Aluma correctly anticipated that PRASA would file a motion in limine on the use of Modified Total Cost (MTC) methodology, in which it challenges Aluma's financial expert's use of MTC.  *Mot.* in Lim. *Re: Use of the MTC Methodology* at 1 (ECF No. 644).  While the Court will consider PRASA's *Daubert* challenge to an expert's reliance on this methodology in a separate order addressing that motion in limine, it does not strike the Court that an expert's reliance on a methodology should be stricken from a report or held inadmissible as testimony on the grounds that it is a legal conclusion.  Use of a particular methodology is not a proper basis for exclusion as inherently conclusory and the Court thus declines Aluma's request based on the argument that Mr. Rivera's methodology presents an impermissible legal conclusion; it does not.

## VI.  SUMMARY

In sum, the Court grants in part and dismisses in part Aluma's motion in limine to exclude specific portions of the expert report and testimony of PRASA's financial expert, Rafael E. Rivera Rodriguez.  The Court grants Aluma's motion as to the statements in the expert report the Court labeled as numbers 1, 5, and 6 and

dismisses the motion as to statements number 2, 3, 4, and 7.  The Court also dismisses Aluma's motion as to both statements it characterizes as impermissibly speculative; as described within this order, this challenges goes to weight, not admissibility, and the proper approach is for Aluma to press this inquiry on cross-examination.

Further, under the law of the First Circuit, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is definitive.  *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018).  In general, "[p]retrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved."  *Id.* (citing FED. R. EVID. 103 advisory committee's note to 2000 amendment); *see also Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

## VII.   CONCLUSION

The Court GRANTS in part and DISMISSES in part Aluma's Motion in Limine (ECF No. 641).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2025