UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

TRAVELERS CASUALTY & SURETY )
COMPANY OF AMERICA, )
 )
    Plaintiff/Counterclaim Defendant, )
 )
             v. )     No. 3:18-cv-01795-JAW
 )
ALBERTO VÁZQUEZ-COLON, et al., )
 )
    Defendants/Counterclaim Plaintiffs. )

**ORDER ON PRASA'S MOTION IN LIMINE REGARDING USE OF THE
MODIFIED TOTAL COST METHODOLOGY**

A defendant moves in limine to prevent an opposing party's financial expert from relying on Modified Total Cost methodology and to strike the opposing party's damages calculation reached through use of this methodology. Recognizing that the court previously issued an order on the same issues the defendant now presents in limine and concluding that this prior order contains no clear error and does not work a manifest injustice, the court dismisses the defendant's motion in limine pursuant to the law of the case doctrine.

**I.    BACKGROUND**

With trial looming, on March 11, 2025, Puerto Rico Aqueduct and Sewer Authority (PRASA) filed a motion in limine "request[ing] the Court to order that the [Modified Total Cost (MTC)] methodology cannot be used in this case, and to strike Aluma's valuation of the damages reached through that methodology." *Mot.* in Lim.

*Re: Use of the MTC Methodology* at 1 (ECF No. 644) (*PRASA's Mot.*).[1]  On March 14, 2025, Aluma Construction Corporation (Aluma) filed its opposition.  *Opp'n to Mot. in Lim. Regarding Modified Total Cost Method (Dkt. 638/644)* (ECF No. 654) (*Aluma's Opp'n*).

## II.   OVERVIEW

In 2012, Travelers Casualty & Surety Company of America (Travelers) issued a General Agreement of Indemnity in favor of Aluma and issued surety bonds, securing Aluma's performance and its fulfillment of three construction contracts in Puerto Rico.  Travelers was required to pay on the surety bond, indemnified by corporate and individual indemnifiers, and this lawsuit is its attempt to collect from the indemnifiers its surety payment plus costs and expenses.  Furthermore, Travelers asserted that it had paid claims from Aluma's subcontractors, workers, materialmen, and others and that Travelers was, therefore, subrogated against PRASA for that amount.  Travelers' relatively straightforward claims against the owner of the construction project and the indemnifiers subsequently devolved into a complicated

---

[1]     First, although all motions in limine were due on March 7, 2025, *Rep. of Final Pretrial Conf. and Order* at 3 (ECF No. 623), and the motion the Court considers in this order was filed on March 11, 2025, the Court considers PRASA's motion timely filed.  PRASA initially submitted this motion in limine by the deadline, but later removed the motion because "[c]ounsel filed using another counsel's login/password."  *Mot. in Lim. Re: Use of the MTC Methodology* (ECF No. 638).  PRASA then resubmitted the same motion on March 11, 2025; the Court addresses this latter filing in this order.

Second, PRASA's motion "requests the Court to order that the MTS cannot be used in this case, and to strike Aluma's valuation of the damages reached through that methodology."  *PRASA's Mot.* at 1.  This is the only instance in the motion in which PRASA refers to Aluma's expert's methodology by the abbreviation "MTS"; the rest of the order uses "MTC" in reference to Modified Total Cost methodology.  The Court assumes MTS was a typographical error and corrects it to MTC.

dispute among PRASA, Aluma, and the indemnifiers as to who was responsible for construction delays and cost.

Aluma and the other Defendants/Crossclaimants[2] seek damages for contractual torts, alleging they were induced into a construction contract that was negligently designed and managed by PRASA.  In the alternative, Aluma seeks damages pursuant to the terms of the contract for unpaid costs and/or damages caused by the numerous change orders and different site conditions in the project site.  Chubb Insurance Company, a third-party defendant, is an insurer of PRASA. The only pending matter concerning Travelers is the imposition of attorney's fees and costs, and interest on the debt.

## III.    THE PARTIES' POSITIONS

### A.    PRASA's Motion in Limine

PRASA's motion in limine "requests the Court to order that the MT[C] methodology cannot be used in this case, and to strike Aluma's valuation of the damages reached through that methodology." *PRASA's Mot.* at 1.  It proffers that Aluma's financial expert, Carlos J. Iglesias Colon, used the MTC methodology and

---

[2]    At the final pretrial conference, the Court asked about the status of several of the parties, who are listed as active parties on the docket but are not represented by counsel.  The docket currently lists as Defendants/Crossclaimants: Alberto Vazquez-Colon, Hilda Pineiro-Caceres, Carlos Gonzalez-Torres, Ivette Gomez-Diaz, Miguel Bermudez-Carmona, Aluma Construction Corporation, Vieques Concrete Mix Corporation, Inter-Island Ferry System Corporation, Vieques F.O.&G. Inc., PRASA, Conjugal Partnership Vazquez-Pineiro, Conjugal Partnership Gonzalez-Gomez.  After some discussion, the parties suggested that some of the individuals and entities should no longer be parties to the case.  The Court instructed the parties to file an update as to the status of all the parties, except for those represented at the final pretrial conference, by February 26, 2025.  As of the date of this order's docketing, no such informative motion has been filed.

points out that "[i]t has been admitted that this methodology can only be used if five criteria are met."  *Id.*  Here, PRASA says, at least two criteria are absent: (1) Aluma must prove there is no other method for establishing the claim, and (2) Aluma must be able to establish what percentage of the costs was caused by its own inefficiency.  *Id.*

After quoting from the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, *see id.* at 2-5, PRASA presents a series of "uncontested facts."  First, it says, that after final completion was achieved, Aluma sent a letter to CH Caribe, the Project Manager, presenting its "*claim for the losses suffered and not compensated in the reference[d] project*" and stating "*[n]otwithstanding the provisions of Art. 10 of the General Conditions and for the reasons set forth herein, the Modified Total Cost [MTC] Method is used as a vehicle for filing the claim.*"  *Id.* at 6 (quoting *id.*, Attach. 1, *June 16, 2014 Letter* at 1) (PRASA's emphasis).  PRASA proceeds to state that the same letter communicated that the MTC Method can be applied if the following five prerequisites are satisfied:

1. There is no other way of accurately estimating the economic damages that Aluma received in the project;

2. There were no noticeable errors in the Aluma Proposal and it was for the fair value (not *underbid*);

3. The inefficiency of Aluma can be distinguished from the damages caused by the acts of third parties;

4. The current cost incurred by Aluma is reasonable in light of the project's circumstances;

5. The contractor used a reasonable accounting method to accumulate project costs.

4

*Id.* (citing *June 16, 2014 Letter* at 7-8) (PRASA's emphasis) (enumeration altered).

PRASA's statement of allegedly uncontested facts continues that on July 14, 2014, CH Caribe evaluated and rejected Aluma's claim. *Id.* (citing *id.*, Attach. 2, *July 14, 2014 Letter*). PRASA says Change Order L "was the last change order of the project and was signed by the parties on separate days in August and September 2014," *id.* (citing *id.*, Attach. 3, *Change Order L Letter* at 1, 3), and "[t]he last approved amendment to Aluma's contract (which corresponds to Change Order L) is dated September 11[], 2014, but signed by the parties in separate days in August and September 2014." *Id.* (citing *id.*, Attach. 4, *Written Am.*). PRASA reports that these attachments state, in relevant part:

> The Contractor declares that a "Modified Total Cost" (MTC) claim was submitted to CH Caribe/PRASA on June 16, 2014 and amended on June 18, 2014. The alleged claims are regarding loss of productivity, costs for the use of Aluma equipment, site office overhead, home office overhead, costs to finance project and interest charged, loss of potential earnings on other projects, costs for closing corporation and cost for damages to Aluma partners, among other conditions as indicated and justified in the MTC. The Contractor reserves its right to pursue the alleged claims as stated in the MTC in the appropriate forum. PRASA reserves its right to raise any and all affirmative defenses based on the merits of the alleged claims in the MTC submitted by the Contractor, and the Contract documents. This Written Amendment does not cause, and Contractor will not claim, additional economic impact costs to the Contract, except for those above mentioned in the MTC.

*Id.* at 7 (quoting *Change Order L Letter* at 2; *Written Am.* at 4).

PRASA says, Aluma's financial expert, Mr. Iglesias, "reached his opinions through the use of the MTC." *Id.* (citing *id.*, Attach. 5, *Iglesias Econ. Damages Rep.* at 7 (*Iglesias Expert Rep.*)).

Turning to its legal argument, PRASA asserts, first, that two prior rulings in this case from then Chief Judge Gustavo A. Gelpí dismissing PRASA's prior motion in limine and PRASA's motion to reconsider, respectively, "[are] not the law of the case." *Id.* (discussing *Mot.* in Lim. *Re: Op. of Aluma's Proffered Expert (CPA Armando Suarez) Related to Value of Claim for* Loss of Productivity (ECF No. 378) (*Suárez Mot. in Lim.*); *Mem. Order* (ECF No. 441); *Mot. Requesting Recons. of ECF#441 and for Evidentiary Hr'g* (ECF No. 448); *Mem. Order* (ECF No. 456) (*Order Dismissing Mot. for Recons.*)). PRASA acknowledges that its January 28, 2021 motion in limine, which argued that Aluma's prior financial expert, Armando Suárez, could not use the MTC methodology because there was insufficient evidence to prove the pre-requisites permitting the use of this methodology, *Suárez Mot. in Lim.*, is similar to its current motion, and further notes that Mr. Iglesias justifies his own use of the MTC methodology in his expert report because, in his words, "[t]he court reviewed the circumstances and concluded that this condition was met, affirming that the MTC method was appropriate and justified for quantifying Aluma's damages." *Id.* (quoting *Iglesias Expert Rep.* at 8) (citation supplied by Court).

PRASA, however, rejects Aluma's argument that Judge Gelpí's September 15, 2021 order dismissing PRASA's motion in limine, and his October 15, 2021 order dismissing PRASA's motion for reconsideration, are subject to the law of the case doctrine. *Id.* at 8. PRASA posits that this doctrine does not constitute "an obligatory rule," and "permits a [c]ourt to reexamine its own prior determination at a later stage of the same case, if deemed appropriate." *Id.* (citing, e.g., *Conley v. United States*, 323

6

F.3d 7, 12 (1st Cir. 2003)).    PRASA maintains that "[t]he law of the case can be avoided on several different bases," including "if newly discovered evidence bears on the question." *Id.* (citing *Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002)). In the instant case, PRASA argues, Judge Gelpí's prior decisions addressed the report of an expert who since passed away and thus "[r]egardless of what the Court previously ruled on whether former expert CPA Suárez was justified in using the MTC, PRASA has the right to question whether the new expert Iglesias properly analyzed and concluded whether the MTC could be used." *Id.*

Next, PRASA quotes from Judge Gelpí's summary of the caselaw on the MTC methodology in his October 15, 2021 order dismissing PRASA's motion for reconsideration. *Id.* at 9 (quoting *Order Dismissing Mot. for Recons.* at 4-5 (citation supplied by the Court)).    PRASA emphasizes that, in this order, Judge Gelpí recognized a plaintiff bears the burden of proving that "(1) the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 5 (in turn quoting *Raytheon Co. v. White*, 305 F.3d 1354, 1365 (Fed. Cir. 2002))).    PRASA proceeds to quote further from a Federal Circuit case cited by Judge Gelpí in his order on reconsideration, which held "[t]he contractor has the burden of proving these requirements are met" and "[w]here it is impractical for a contractor to prove its actual costs because it failed to keep accurate records, when such records could have been kept, and where the

contractor does not provide a legitimate reason for its failure to keep the records, the total cost method of recovery is not available to the contractor." *Id.* at 9-10 (quoting *Propellex Corp. v. Brownlee*, 342 F.3d 1335, 1339, 1342 (Fed. Cir. 2003)).

PRASA argues that Judge Gelpí's dismissal of its motion to reconsider "is incorrect and . . . reviewable by the Court not only because of clear error, but because the circumstances have changed, and the Court must review whether CPA Iglesias properly justified using the MTC." *Id.* at 10. In support of its position that Judge Gelpí committed clear error, PRASA quotes language from the reconsideration order that "[t]he Court agrees . . . it erred when it analyzed the scientific soundness and methodological reliability of proposed expert's opinion, which focused exclusively on the [MTC] method without considering its prerequisite safeguards. As such, the Court now turns to the merits of whether the contested prerequisite safeguards have been established." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 6) (citation provided by Court).

PRASA next argues that Judge Gelpí's analysis of whether Mr. Suárez satisfied the first prerequisite, which PRASA summarizes as "no other reasonable method to estimate damages," "did not actually review whether former expert CPA Suárez reached such conclusion; rather, Judge Gelpí focused on whether Aluma's argument to that effect—premised on the statements of its principal Carlos González—was believable." *Id.* PRASA alleges Judge Gelpí's approach thus "passed judgment and ultimately gave credibility to Mr. González's self-serving statements that no other method was reasonable because it was 'impossible to precisely identify

and assign indirect costs, such as the loss of productivity, because of the 124 different site conditions encountered." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 7).

PRASA also takes issue with Judge Gelpí's analysis of Aluma's alleged inefficiency in the construction project, which goes to the fourth prerequisite for use of the MTC methodology. *Id.* at 11 (citing *Order Dismissing Mot. for Recons.* at 8). PRASA objects to Judge Gelpí's reliance on Aluma's and Mr. González's statements that "there is no evidence on the record as to the fourth prerequisite that Aluma committed any inefficiency whatsoever" but "no one is perfect and, as such, [Aluma] has assigned against itself 2.5%." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 9). By relying on this allegedly self-serving statement, PRASA proffers that Judge Gelpí "basically ruled in favor of Aluma and threw away all of PRASA's defenses, as if the only issue left in the case was to quantify Aluma's damages" when he determined "Aluma has demonstrated that none of the costs associated with the different site conditions could be traced to it, the contractor[,] [and] Aluma's incurred costs stem from PRASA's change orders that addressed the different site conditions," which, according to Aluma, "occurred because of PRASA's willful ignorance of the problems with the foundation at the construction site." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 10) (citation supplied by Court). In sum, PRASA disputes Judge Gelpí's conclusion that Aluma established the fourth prerequisite for use of the MTC methodology.

Extending its argument to Mr. Iglesias's report, PRASA argues, first, that he did not establish the first prerequisite because, "present[ing] no supporting evidence,"

he concluded that an alternative method for estimating damages was unavailable due to the "sheer volume of DSCs [which] made it impractical and prohibitively costly to segregate and assign specific portions of the costs to individual issues." *Id.* at 12-13 (quoting *Iglesias Expert Rep.* at 8) (citation supplied by Court) (emphasis removed). PRASA continues to quote from Mr. Iglesias's report, the next sentence of which states: "[t]he court reviewed the circumstances and concluded that this condition was met, affirming that the MTC method was appropriate," itself quoting Judge Gelpí's reasoned analysis of the first prerequisite in the order dismissing the motion for reconsideration. *Id.* (quoting *Iglesias Expert Rep.* at 8 (in turn quoting from *Order Dismissing Mot. for Recons.* at 9-10) (citation supplied by Court)). PRASA alleges Mr. Iglesias "turns a blind eye" to Mr. González's deposition statement that he "did not discard any other method," which PRASA contends is dispositive evidence that Mr. González did not consider an alternative methodology for calculating cost before applying MTC. *Id.* at 13 (quoting *id.*, Attach. 6, *Carlos González Dep. Tr.* at 192:5-20). In sum, PRASA argues "Aluma has not met its burden of proving the MTC is the only practical method available to estimate the damages claimed." *Id.* (PRASA's emphasis).

Second, PRASA argues Mr. Iglesias's estimate of Aluma's inefficiency at 2.5% is "arbitrary." *Id.* at 14. PRASA quotes Mr. Iglesias's report as stating the MTC method assumes that contractors bear some responsibility for excess cost incurred during the project, and that this method "begins with the contractor calculating the damage using the total cost approach, which involves determining the difference

between the actual costs incurred and the original estimated costs," and then "identify[ing] and subtract[ing] any additional costs that are caused by its own errors, inefficiencies, or actions" as may be documented in project records such as logbooks, correspondence, and other contemporaneous records. *Id.* (quoting *Iglesias Expert Rep.* at 7). PRASA argues Mr. Iglesias's statement in his report that he adopted Mr. Suárez's determination of a 2.5% rate of inefficiency because it is "proactive and reasonable" and had been "accept[ed] by the Court," is insufficient to establish that Mr. Iglesias satisfied the fourth prerequisite. *Id.* at 14 (quoting *Iglesias Rep.* at 12) (citation supplied by Court). In further support for its position, PRASA contends Mr. González, when questioned at his deposition regarding the factual basis for the calculation of 2.5%, was "elusive" when he explained this number as based on "[his] knowledge within the industry of design, construction and knowing Aluma's brigade." *Id.* at 15.

PRASA concludes that it has shown that Aluma's expert has not met at least two of the prerequisites for use of the MTC methodology because Mr. González's opinion (1) is not based on sufficient facts or data, and (2) is the product of unreliable principles and methods. *Id.* at 17 (discussing FED. R. EVID. 702) (citation supplied by Court). It thus moves the Court to exclude Mr. Iglesias's expert report and testimony on the grounds that they will not be helpful to the jury. *Id.* Alternatively, PRASA requests an evidentiary hearing on this matter pursuant to Federal Rule of Evidence 104 before the Court allows Mr. Iglesias to testify. *Id.* If the Court grants neither request, then PRASA asks the Court to "at least rule that [it] is entitled to raise these

issues at trial during cross[-]examination . . . so that the court can make a preliminary decision on whether all pre-requisites of the MTC method have been met." *Id.* at 18.

### B.    Aluma's Opposition

Aluma opposes PRASA's motion, contending it "is a blatant attempt to bypass" prior orders from this Court denying the same requests PRASA again raises in its motion in limine and contending PRASA's conduct warrants sanctions. *Aluma's Opp'n* ¶¶ 6-8. "From a simple reading of the current Motion in Limine," Aluma maintains, "it is obvious that PRASA simply wants to Court to revisit Judge Gelpí's prior ruling and reconsider it for its benefit." *Id.* ¶ 10.

Turning to the merits of PRASA's motion, Aluma argues further that "[w]hile the First Circuit has not expressed an opinion as to the use of the MTC [method], there is case[]law which allows us to examine its requirements and uses," and the methodology "was created to fill certain flaws in the Total Cost Method and make it fairer to both parties." *Id.* ¶ 17 (collecting cases). Aluma incorporates by reference its arguments in response to PRASA's two prior attempts to discredit its use of the MTC methodology, *id.* ¶ 24, and asserts it has already sufficiently established the four prerequisites needed for the methodology's use in this case. *Id.* ¶¶ 26-29. It further reminds the Court that on two prior occasions it concluded Aluma had sufficiently proven the existence of the necessary prerequisites. *Id.* ¶ 30. Finally, Aluma insists it is for the factfinder to establish what weight it gives to an expert's testimony and that PRASA's argument is not a proper basis for exclusion of evidence. *Id.* ¶ 37.

## IV.    LEGAL STANDARD

The admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702 and by the United States Supreme Court in *Daubert* and its progeny.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The First Circuit has "long entrusted federal trial judges to be 'gate-keeper[s],' empowered by Rule 702 and *Daubert* to 'ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597). "[T]he overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with speculative expert testimony often satisfying neither criterion. *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion").

In general, "[e]xpert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and if the proposed witness is qualified as an expert by some specialized 'knowledge, skill, experience, training, or education.'" *Liberty Mut. Ins. Co. v. Broan-NuTone LLC*, No. 21-cv-11986-DLC, 2024 U.S. Dist. LEXIS 76408, at *5-6 (D. Mass. Apr. 26, 2024) (quoting *Daubert*, 509 U.S. at 588).

The Advisory Committee on the Rules of Evidence (the Committee) amended Federal Rule of Evidence 702 in 2023, explaining: "[f]irst, the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."[3] FED. R. EVID. 702 advisory committee's note to 2023 amendment. The Committee cited Federal Rule of Evidence 104(a) to explain "[t]his is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the

---

[3]    In 2023, Federal Rule of Evidence 702 was amended as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise <u>if the proponent demonstrates to the court that it is more likely than not that</u>:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

FED. R. EVID. 702, 2023 amends.

evidence rules." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.* The Committee concluded that "[n]othing in the amendment imposes any new, specific procedures. Rather, the amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702." *Id.*

## V.    DISCUSSION

### A.    The Law of the Case Doctrine

"Under the law of the case doctrine," the First Circuit has written, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Negron-Almeda v. Santiago*, 579 F.3d 45, 50 (1st Cir. 2009) (quoting *United States v. Wallace*, 573 F.3d 82, 87-88 (1st Cir. 2009)). This Court has the authority to revisit its prior orders. *Arizona v. California*, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power"). Even so, the standard for reviewing a prior decision is strict. In *Harlow v. Children's Hospital*, 432 F.3d 50 (1st Cir. 2005), the First Circuit wrote that "[u]nder the law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Id.* at 55 (quoting *Arizona*, 460 U.S. at 618 n.8); *accord United States v. Matthews*, 643 F.3d 9, 14 (1st Cir. 2011) ("A party may avoid the application of the law of the case doctrine only by showing that, in the

relevant time frame, 'controlling legal authority has changed dramatically'; or by showing that 'significant new evidence, not earlier obtainable in the exercise of due diligence,' has come to light; or by showing that the earlier decision is blatantly erroneous and, if uncorrected, would work a miscarriage of justice") (quoting *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993)).

The Court agrees with Aluma that the law of the case doctrine presents a substantial obstacle for PRASA's current motion in limine.  As PRASA itself acknowledges, on January 28, 2021, it filed a motion in limine challenging Mr. Suárez's use of the MTC methodology in his expert report, *Suárez Mot. in Lim.*, and on September 15, 2021, the Court dismissed PRASA's motion and then subsequently denied its motion for reconsideration.  *Mem. Order*; *Order Dismissing Mot. for Recons.* Mr. Suárez was Aluma's original financial expert; when he unfortunately passed away, Mr. Iglesias assumed this role.

PRASA insists that Judge Gelpí's September 15, 2021 order dismissing the motion in limine and his October 15, 2021 motion dismissing PRASA's motion for reconsideration should not bind the Court's consideration of the present motion as the law of the case because Judge Gelpí's dismissal of its motion to reconsider "is incorrect and . . . reviewable by the Court not only because of clear error, but because the circumstances have changed, and the Court must review whether CPA Iglesias properly justified using the MTC."  *PRASA's Mot.* at 10.  The Court interprets this as two discrete grounds for departing from the Court's prior holding: the first, that Judge Gelpí committed clear error, and the second, that Mr. Iglesias's use of the MTC

methodology is distinguishable from Mr. Suárez's use of the same methodology in his own expert report. The Court considers each argument in turn.

### 1.    Clear Error

PRASA specifically contends that Judge Gelpí's order dismissing the motion for reconsideration committed "clear error" on two points: first, in its conclusion that Mr. Suárez established the first prerequisite to using the MTC methodology, that the nature of the particular losses make it impossible or highly impracticable to determine them with a reasonable degree of accuracy; and, second, in concluding Mr. Suárez established the fourth prerequisite, that Aluma "was not responsible for the added expenses." *Id.* at 9 (quoting *Order Dismissing Mot. for Recons.* at 5 (in turn quoting *Raytheon*, 305 F.3d at 1365).

PRASA's argument that Judge Gelpí committed "clear error" in determining that Mr. Suárez sufficiently established the first and fourth prerequisites for use of the MTC methodology does not persuade the Court. On the first prerequisite, PRASA argues Judge Gelpí "did not actually review whether former expert CPA Suárez reached such conclusion [that no other reasonable method to estimate damages was available]; rather, Judge Gelpí focused on whether Aluma's argument to that effect—premised on the statements of its principal Carlos González—was believable." *Id.* at 10.  PRASA argues Judge Gelpí's approach thus "passed judgment and ultimately gave credibility to Mr. González's self-serving statements that no other method was reasonable because it was 'impossible to precisely identify and assign indirect costs,

such as the loss of productivity, because of the 124 different site conditions encountered." *Id.* (quoting *Order Dismissing Mot. for Recons.* at 7).

That characterization of Judge Gelpí's order is, simply put, incorrect. Judge Gelpí, at the page cited by PRASA, summarized Aluma's arguments regarding the first prerequisite for an entire page, walking through its analysis of the factors Aluma identified as to why an alternative method of cost calculation was reasonable. *See Order Dismissing Mot. for Recons.* at 7. These factors included Aluma's determinations "that no alternative method was feasible because the 124 different site conditions made it extremely difficult and costly for Aluma to collect and organize the information necessary to assign portions of the costs using the measurement approach"; that 103 sites "overlapped in substantial and unpredictable manners [such] that PRASA provided allowances for aspects of the work that the parties knew would be included but had not sufficiently articulated in the plans and specifications"; that "the allowances are evidence of the chaos that overwhelmed the project, making the collection of information impossible"; and that "[c]onsequently . . . the modified total cost method was the only reasonable alternative to calculate its damages." *Id.*

Contrary to PRASA's contention that Judge Gelpí "did not actually review whether former expert CPA Suárez reached such conclusion [that no other reasonable method to estimate damages was available]," *PRASA's Mot.* at 10, on pages nine and ten of the order denying the motion for reconsideration, the Judge wrote:

> The Court agrees with Aluma. As to the first safeguard, the Court finds that, after reviewing the change orders and given the nature of its claim in the instant case, Aluma has demonstrated the impracticability of proving its actual losses directly for the costs associated with the

18

different site conditions. The exact amount of additional work that Aluma had to perform because of the problems with the foundation at the construction site is difficult, if not impossible, to determine because of the intertwined nature of the corrective work being performed. See American Line Builders, Inc. v. United States, 26 Cl. Ct. 1155, 1181-82 (Ct. Cl. 1992); J.D. Hedin Constr. Co. v. United States, 171 Ct. Cl. 70, 86-87 (Ct. Cl. 1965). Adverse weather, additional trenching, re-excavation, and muddy conditions caused difficulties and slowed down the performance of fixing the sewage system. Although Aluma had calculated the costs associated with the first 21 different site conditions using a different method (the measurement approach), the chaos that ensued permeated for an additional two years of construction and made it impracticable to continue using this more accurate method. PRASA's allowances are evidence of the Construction Project's mayhem that made collection of information impossible. As such, Aluma has demonstrated that the nature of the particular losses made it unfeasible to determine them with a reasonable degree of accuracy, and therefore no other alternative damage calculation method was available.

*Order Dismissing Mot. for Recons.* at 9-10. Based on his detailed analysis, Judge Gelpí plainly reviewed Mr. Suárez's contention that the first prerequisite was established; the Court discerns nothing even resembling "clear error" in the Honorable Judge's approach or conclusion.

PRASA also attacks as "clear error" Judge Gelpí's analysis of Aluma's alleged inefficiency in the construction project as relevant to the fourth prerequisite for use of the MTC methodology, arguing Judge Gelpí "basically ruled in favor of Aluma and threw away all of PRASA's defenses, as if the only issue left in the case was to quantify Aluma's damages." *PRASA's Mot.* at 11. The Court does not perceive that as a critique of Judge Gelpí's methodology, but rather as PRASA's dissatisfaction with his conclusion.

The Court concurs with Jude Gelpí's methodology and conclusion and sees no clear error in either. After reviewing Aluma's arguments as to its satisfaction of the

fourth prerequisite, and PRASA's arguments against, *see Order Dismissing Mot. for Recons.* at 8-9, the Judge said:

> As to the fourth safeguard, the Court finds that Aluma has demonstrated that none of the costs associated with the different site conditions could be traced to it, the contractor. Aluma's incurred costs stem from PRASA's change orders that addressed the different site conditions. Aluma claims that the different site conditions occurred because of PRASA's willful ignorance of the problems with the foundation at the construction site. Moreover, Aluma notes that it was not blamed for any of the delays stemming from the different site conditions. As such, Aluma has demonstrated that it was not responsible for the added expenses and thus establishes the fourth safeguard. PRASA's argument fails because experts in the field of construction reasonably rely on a company's corporate officers to form their conclusions. See <u>Int'l Adhesive Coating</u>, 851 F.2d at 544-45.

*Order Dismissing Mot. for Recons.* at 10. The Court fully agrees with Judge Gelpí's analysis and his conclusion, including his citation to the First Circuit's holding in *International Adhesive Coating Co. v. Bolton Emerson International, Inc.*, 951 F.2d 540, 544 (1st Cir. 1988), in support of his conclusion that "[a]n expert may rely on facts or data that have not been admitted into evidence if the expert's reliance is reasonable as 'measured against the facts on which experts in the particular field normally rely.'" *Order Dismissing Mot. for Recons.* at 3 (quoting *Int'l Adhesive Coating Co.*, 851 F.2d at 544) ("company's financial records and interviews with company personnel were "obvious[ly] sources of information normally and reasonably relied upon by accountants")). PRASA has provided no basis for the Court to conclude Judge Gelpí's order regarding the fourth prerequisite was clearly incorrect as a matter of law.

## 2.    The Prior Order's Application to Mr. Iglesias

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona*, 460 U.S. at 618. The Court interprets PRASA's second challenge to Judge Gelpí's order dismissing the motion for reconsideration as asserting that Mr. Iglesias's use of the MTC methodology is different from Mr. Suárez's prior use of the same methodology, and accordingly, these are not "the same issues" for which the law of the case doctrine would apply. The Court thus compares the expert reports of Mr. Iglesias and Mr. Suárez, specifically with regard to their respective analysis of the first and fourth prerequisites, as these are the two points of Judge Gelpí's prior order that PRASA now challenges. If Mr. Iglesias's analysis as to either prerequisite is markedly different than Mr. Suárez's, the Court would agree with PRASA that this dissimilarity would lend support to its argument that these are not the "same issues," and, thus, the law of the case doctrine does not apply. *Arizona*, 460 U.S. at 618.

Unfortunately for PRASA, that is not the case here. Addressing the first prerequisite, Mr. Iglesias said:

> Other methods of calculating damages were not practical in this case. To satisfy this factor, it must be demonstrated that no reasonable alternative exists for determining the damages. The sheer volume of DSCs made it impractical and prohibitively costly to segregate and assign specific portions of the costs to individual issues. <u>The court reviewed the circumstances and concluded that this condition was met</u>, affirming that the MTC method was appropriate and justified for quantifying Aluma's damages.
>
> <u>As outlined in the Memorandum Order ([ECF No.] 456):</u>

21

> "As to the first safeguard, the Court finds that, after reviewing the change orders and given the nature of its claim in the instant case, Aluma has demonstrated the impracticability of proving its actual losses directly for the costs associated with the different site conditions. The exact amount of additional work that Aluma had to perform because of the problems with the foundation at the construction site is difficult, if not impossible, to determine because of the intertwined nature of the corrective work being performed."

*Iglesias Expert Rep.* at 11 (quoting *Order Dismissing Mot. for Recons.* at 9-10)) (emphasis supplied by Court).

It is clear from this plain language that Mr. Iglesias's argument that the first prerequisite was satisfied is, essentially, that Judge Gelpí previously considered whether Mr. Suárez had established this factor and concluded he had. Because Mr. Suárez and Mr. Iglesias presented the same argument regarding the first pre-requisite, the law of the case doctrine thus extends Judge Gelpí's analysis of Mr. Suárez's report to Mr. Iglesias.

The same is true of the fourth prerequisite. PRASA takes issue with Mr. Iglesias's analysis on this point, insisting his conclusion is "arbitrary." *PRASA's Mot.* at 14. The Court reviewed the relevant section of Mr. Iglesias's report:

> Aluma's allocation of 2.5% represents a proactive and reasonable measure rather than an acknowledgment of any fault or inefficiency on their part. The Court's acceptance of this allocation further validates Aluma's approach. Since [the] Court agreed with Aluma's 2.5% allocation, we applied the use of this percentage as an inefficiency measure method.

*Iglesias Expert Rep.* at 12 (emphasis supplied by Court).

PRASA argues Mr. Iglesias's subsequent statement in his report that he adopted Mr. Suárez's determination of 2.5% because it is "proactive and reasonable"

and had been "accept[ed] by the Court," is insufficient to establish that Mr. Iglesias satisfied the fourth prerequisite. *PRASA's Mot.* at 14 (quoting *Iglesias Rep.* at 12) (citation supplied by Court). The Court again disagrees. The problem for PRASA is that, again, that Mr. Iglesias explicitly incorporated Mr. Suárez's analysis on this factor as had previously been reviewed and accepted by this Court; thus, the law of the case doctrine applies.

For the same reasons, insofar as PRASA moves the Court to reconsider Judge Gelpí's decision on the ground that Mr. Iglesias's report amounts to "significant new evidence, not earlier obtainable in the exercise of due diligence," the Court is not persuaded. *Matthews*, 643 F.3d at 14 (quoting *Bell*, 988 F.2d at 251). Mr. Iglesias adopted Mr. Suárez's analysis and conclusions on the two points challenged by PRASA and, thus, his report cannot plausibly be considered "new evidence." *Id.*

The Court concludes Judge Gelpí's September 15, 2021 order dismissing PRASA's motion in limine, and his October 15, 2021 order dismissing PRASA's motion for reconsideration, are subject to the law of the case doctrine and, further, extend to PRASA's pending motion in limine regarding Mr. Iglesias's use of the MTC methodology. As the Court concludes that Judge Gelpí's orders are neither clearly erroneous nor would they work a manifest injustice, the Court declines to reopen the issues already resolved by Judge Gelpí's September 15, 2021 order dismissing PRASA's motion in limine, and its October 15, 2021 order dismissing PRASA's motion for reconsideration.

Further, under the law of the First Circuit, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is definitive. *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018). In general, "[p]retrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved." *Id.* (citing FED. R. EVID. 103 advisory committee's note to 2000 amendment); *see also Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

## VI.    CONCLUSION

The Court DISMISSES without prejudice PRASA's Motion *in Limine* Re: Use of the MTC Methodology (ECF No. 644).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2025