UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| v. | ) )  No. 3:18-cv-01795-JAW |
| ALBERTO VÁZQUEZ-COLON, et al., | ) ) ) |
| Defendants/Counterclaim Plaintiffs. | ) |

**ORDER ON PRASA'S MOTION IN LIMINE TO EXCLUDE CARLOS IGLESIAS COLON AS ALUMA'S FINANCIAL EXPERT**

The court dismisses a defendant's motion in limine to disqualify an opposing party's financial expert on the grounds that the expert has a conflict of interest violative of Puerto Rico's Anti-Corruption Code, concluding the defendant has not demonstrated the expert has a conflict within the meaning of that statute.

**I.   BACKGROUND**

With trial looming, on March 7, 2025, Puerto Rico Aqueduct and Sewer Authority (PRASA) filed a motion in limine to exclude Carlos J. Iglesias Colon as Aluma Construction Corporation's (Aluma) financial expert. *Mot.* in Lim. *Re: Disqualification of Carlos Iglesias as Aluma's Fin. Expert* (ECF No. 634) (*PRASA's Mot.*). On March 14, 2025, Aluma filed its opposition to the disqualification of Mr. Iglesias as its expert witness. *Opp'n to Mot. in Lim. Regarding Aluma's Fin. Expert Carlos Iglesias (Dkt. 634)* (ECF No. 651) (*Aluma's Opp'n*).

**II. OVERVIEW**

In 2012, Travelers Casualty & Surety Company of America (Travelers) issued a General Agreement of Indemnity in favor of Aluma and issued surety bonds, securing Aluma's performance and its fulfillment of three construction contracts in Puerto Rico. Travelers was required to pay on the surety bond, indemnified by corporate and individual indemnifiers, and this lawsuit is its attempt to collect from the indemnifiers its surety payment plus costs and expenses. Furthermore, Travelers asserted that it had paid claims from Aluma's subcontractors, workers, materialmen, and others and that Travelers was, therefore, subrogated against PRASA for that amount. Travelers' relatively straightforward claims against the owner of the construction project and the indemnifiers subsequently devolved into a complicated dispute among PRASA, Aluma, and the indemnifiers as to who was responsible for construction delays and cost.

Aluma and the other Defendants/Crossclaimants[1] seek damages for contractual torts, alleging they were induced into a construction contract that was negligently designed and managed by PRASA. In the alternative, Aluma seeks damages pursuant to the terms of the contract for unpaid costs and/or damages

---

[1] At the final pretrial conference, the Court asked about the status of several of the parties, who are listed as active parties on the docket but are not represented by counsel. The docket currently lists as Defendants/Crossclaimants: Alberto Vazquez-Colon, Hilda Pineiro-Caceres, Carlos Gonzalez-Torres, Ivette Gomez-Diaz, Miguel Bermudez-Carmona, Aluma Construction Corporation, Vieques Concrete Mix Corporation, Inter-Island Ferry System Corporation, Vieques F.O.&G. Inc., PRASA, Conjugal Partnership Vazquez-Pineiro, Conjugal Partnership Gonzalez-Gomez. After some discussion, the parties suggested that some of the individuals and entities should no longer be parties to the case. The Court instructed the parties to file an update as to the status of all the parties, except for those represented at the final pretrial conference, by February 26, 2025. As of this order's docketing, the Court has not received such an informative motion.

caused by the numerous change orders and different site conditions in the project site. Chubb Insurance Company (Chubb), a third-party defendant in this case, is an insurer of PRASA. The only pending matter concerning Travelers is the imposition of attorney's fees and costs, and interest on the debt.

As the parties were preparing for trial to commence on April 2, 2025, Aluma filed an urgent motion on January 21, 2025 informing the Court that its financial expert was no longer able to testify at the upcoming trial due to prolonged illness and that it was in the process of locating a new expert, and requesting a hearing on the issue. *Urgent Mot. Requesting Hr'g to Inform Status of Aluma's Expert Witness* at 1 (ECF No. 607).[2] During a videoconference of counsel on January 23, 2025, the Court ordered Aluma to disclose its new expert witness's identity and résumé by January 30, 2025. *Min. Entry* (ECF No. 609). Aluma complied on January 29, 2025, informing the Court that its replacement expert is Carlos J. Iglesias Colon. *Informative Mot. in Compliance with Order Regarding Aluma's Expert Fin. Witness* at 1 (ECF No. 612).

On February 26, 2025, PRASA and Chubb filed a joint motion seeking leave to depose Mr. Iglesias on the ground that: (1) his expert report, which PRASA and Chubb did not receive until February 19, 2025, includes several changes to damages estimates; (2) he allegedly relied on documents not disclosed during discovery; and (3) an alleged conflict of interest by virtue of his professional experience working for,

---

[2]   For sake of clarity, Aluma was joined in filing this motion by Alberto Vazquez Colon, Hilda Piñeiro Cáceres, and the Conjugal Partnership between existing between them, Carlos Gonzalez Torres, Ivette Gomez, and the Conjugal Partnership existing between them, Miguel Bermudez Carmona, and Vieques F.O.&G., Inc. *Urgent Mot. Requesting Hr'g to Inform Status of Aluma's Expert Witness* at 1. Throughout this order, the Court refers only to "Aluma" but notes it is aware that Aluma's counsel represents these additional individuals, conjugal partnerships, and other entities.

and current role as Managing Partner of, ECOVAL, LLC, a financial and litigation support firm currently supporting several executive agencies of the Puerto Rico government. *Mot. Requesting Leave to Depose Aluma's Newly Announced Fin. Expert CPA Carlos J. Iglesias Colon* at 2-4 (ECF No. 627). Concluding that the discovery deadline lapsed in this case in November 2020, the Court previously denied the parties' joint motion to extend the discovery deadline to allow for the deposition of expert witnesses, and the parties did not avail themselves of the opportunity to conduct such depositions when given the chance, the Court denied PRASA and Chubb's motion to depose Aluma's new expert on March 7, 2025. *Order on Mot. for Leave to Depose Expert* at 1-8 (ECF No. 640).

### III. THE PARTIES' POSITIONS

#### A. PRASA's Motion in Limine

PRASA moves to exclude Aluma's expert witness based on allegations that he has a conflict of interest by virtue of his professional experience working for, and current role as Managing Partner of, ECOVAL, LLC, a financial and litigation support firm currently retained to support several executive agencies of the Puerto Rico government. *PRASA's Mot.* ¶ 10.

PRASA argues that the Anti-Corruption Code for the New Puerto Rico, 3 P.R.L.A. § 1881 *et seq.* (Anti-Corruption Code), "shows that Mr. Iglesias Colon has an unsurmountable conflict of interest that prevents him from testifying in this case, so he must be excluded as an expert for [Aluma]." *Id.* ¶ 2. PRASA explains that the

4

Anti-Corruption Code imposes ethical obligations on those who provide services to the Commonwealth's executive agencies, and states, in relevant part:

> No **person** shall enter into contracts with **executive agencies** if there is any **conflict of interests**. Every person shall certify that **he does not represent private interests in cases** or matters that involve conflicts of interest, or of public policy, between the **executive agency** and the private interests he represents.

*Id.* ¶¶ 3-4 (quoting 3 P.R.L.A. § 1883a(n)) (citation corrected) (PRASA's emphasis). PRASA emphasizes that the statute further states "that no person shall be involved in matters that *could give rise to a conflict of interest or the appearance of a conflict of interest.*" *Id.* ¶ 5 (quoting 3 P.R.L.A. § 1883a(h) (citation corrected) (PRASA's emphasis)).

Alluding to the case at bar, PRASA claims that the Anti-Corruption Code "was instituted by the legislature of the Commonwealth of Puerto Rico specifically to prohibit private contractors from obtaining direct benefits through governmental contracts, and at the same time profiting at the expense of the government by representing private interests against it." *Id.* ¶ 7 (discussing 3 P.R.L.A. § 1883a(n) (citation corrected)). PRASA argues the statute's definitions of, among other terms, "executive agencies," "juridical person," "contract," and "conflict of interest" further establishes the Anti-Corruption Code's relevance to Mr. Iglesias's role in this dispute involving PRASA. *See id.* ¶¶ 8-9 (quoting P.R.L.A. § 1883(a)-(c), (j)-(m)).

Turning to Aluma's expert witness, PRASA argues "[a]s seen, Mr. Iglesias is currently deriving income from his role as managing partner for ECOVAL, a juridical person who has contracts with the government of Puerto Rico; at the same time and

5

because of this litigation, Mr. Iglesias is being paid to testify against PRASA, a public corporation." *Id.* ¶ 10. PRASA argues that Aluma's expert "is getting paid to testify against the same government that pays his employer" and, "[t]hus, his conflict of interest goes beyond a mere appearance; it is an unavoidable reality and precisely the conduct that sec. 1883[a](n) of the Anti-Corruption Code prohibits." *Id.* ¶ 12. PRASA urges the Court to disqualify Mr. Iglesias from testifying as an expert witness on these grounds. *Id.*

### B. Aluma's Opposition

Aluma opposes PRASA's motion to disqualify its financial expert. Specifically, it argues that PRASA's motion in limine "misinterprets the Anti-Corruption Code," which Aluma insists is "a highly valuable tool to root out **corruption**—it simply does not deal with this type of situation." *Aluma's Opp'n* ¶ 9 (Aluma's emphasis). Moreover, Aluma maintains that PRASA is mistaken to equate itself "with other governmental agencies." *Id.* ¶ 10. "Although ECOVAL represents other governmental agencies," Aluma explains, "[it] does not represent and has not represented PRASA." *Id.* Aluma observes further that PRASA does not contest this point. *Id.* Aluma argues that the contract between ECOVAL and other government agencies does not prevent Mr. Iglesias from participating in a trial as an expert witness in a case against other agencies or public corporations. *Id.* ¶ 12.

Next, Aluma argues there is no basis to exclude Mr. Iglesias pursuant to Federal Rule of Civil Procedure 26 or 37, Federal Rule of Evidence 702, or any other relevant professional code of ethics advising certified public accountants on conflicts

6

of interests. *Id.* ¶¶ 16-21; 37-50.  It further cites caselaw from the First Circuit and other courts in support of its point that there must be a showing of substantial prejudice to warrant the exclusion of expert reports, which Aluma maintains PRASA has not satisfied here.  *Id.* ¶ 22 (collecting cases).  Aluma contends "*[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible expert evidence.*"  *Id.* ¶ 23 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)) (Aluma's emphasis).

Aluma also cites caselaw indicating the First Circuit's preference that cases should be entertained on the merits and not be dismissed on procedural technicalities, a principle it contends applies "when evaluating whether to disqualify an expert witness on a technicality."  *Id.* ¶ 24 (citing *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 43 (1st Cir. 2007); *Esposito v. Home Depot U.S.A.*, 590 F.3d 72, 80 (1st Cir. 2009)).  Proceeding to the merits and after reiterating its arguments as to why the Anti-Corruption Code is not applicable to the present motion, or Mr. Iglesias's appearance in this case, *id.* ¶¶ 25-38, Aluma concludes "ECOVAL has not represented PRASA and has no confidential information obtained from PRASA.  Furthermore, ECOVAL has no duties or obligations to PRASA.  Therefore, there is no conflict of interest for Iglesias in the present case."  *Id.* ¶ 39.

In sum, Aluma urges the Court to dismiss PRASA's motion in limine.  *Id.* ¶ 55.

## IV. LEGAL STANDARD

Although Aluma characterizes PRASA's motion as a challenge to Mr. Iglesias's qualifications as an expert under Rule 702, the Court sees PRASA's objection differently. PRASA's objection is limited solely to its contention that Mr. Iglesias's testimony is barred by the Anti-Corruption Code as enacted in 2018 by the Puerto Rico Legislature. *See PRASA's Mot.* ¶¶ 1-12.; 3 P.R.L.A. § 1881 *et seq.* Perhaps because the Anti-Corruption Code is relatively new, neither PRASA nor Aluma cites any caselaw interpreting this statute.

## V. DISCUSSION

### A. The Anti-Corruption Code

The first question is whether PRASA fits within the Anti-Corruption Code's definition of "executive agencies." PRASA argues that it is an executive agency; Aluma says it is not. The definition of "executive agencies" is found at §1883(a):

> The bodies and entities of the Executive Branch of the Government of Puerto Rico, including public corporations, departments, agencies, offices, municipalities, or other instrumentalities.

3 P.R.L.A. § 1883(a). PRASA alleges and Aluma appears to admit that PRASA is a public corporation. *See Mot. to Submit Proposed Jury Instructions Agreed by Aluma, PRASA and Chubb* at 16 (ECF No. 666) (stipulating that "PRASA is [a] public corporation of the Commonwealth with juridical personality to sue and be sued"); *Am. Compl.* ¶ 15 (ECF No. 33) ("The Puerto Rico Aqueduct[] and Sewer Authority is a public corporation of the Commonwealth of Puerto Rico with capacity to sue and be sued"); *Answer to the Am. Compl., Countercl. and Crosscl.* ¶ 15 (ECF No. 36) (Aluma

admitted the allegation in paragraph 15 of the Amended Complaint). Although Aluma uses the term "independent public corporation," the Court has no basis to conclude that PRASA is not a public corporation falling within the Anti-Corruption Code's definition of "executive agency," particularly where the parties' recent joint proposed jury instructions includes this as a stipulated fact. *See Mot. to Submit Proposed Jury Instructions Agreed by Aluma, PRASA and Chubb* at 16.

The answer to the second question, however, is determinative: whether the Anti-Corruption Code should properly be interpreted as broadly as PRASA maintains in its motion in limine. PRASA says that if an expert witness does any work for any executive agency of the commonwealth of Puerto Rico, the expert is barred from testifying against any other Puerto Rican executive agency. Here, PRASA points to the fact that Mr. Iglesias is the "managing partner of ECOVAL, a juridical person who has contacts with the government of Puerto Rico." *PRASA's Mot.* ¶ 10. Although neither PRASA nor Aluma reveal the executive agencies with which ECOVAL has dealings, Aluma asserts that Mr. Iglesias's firm's work does not involve PRASA. *Aluma's Opp'n* ¶ 10. The Court assumes the truth of that contention for purposes of its order on the present motion.

The Court does not conclude that the Puerto Rico Legislature intended the Anti-Corruption Code to bar the expert testimony of a witness against one executive agency whose firm does some work for another executive agency unrelated to the subjects of his or her testimony. First, the Court observes that the Legislature's declaration of public policy focuses on the need to "eradicate corruption." 3 P.R.L.A.

§ 1881 (stating further, "[z]ero tolerance for corruption is hereby declared as public policy"). Without diminishing the plainly beneficent intention of the Legislature in enacting the Anti-Corruption Code, the Court readily sees how the Legislature would properly bar an individual who gains knowledge about the inner workings of an executive agency from using that insider knowledge against the same agency. But the Court does not know how it would eradicate corruption for a person who performs work for one executive agency to be barred from serving as an expert in a case involving a completely different executive agency, where the expert is not using insider knowledge to gain an advantage for his client against the other agency.

This view is buttressed by other provisions of the Anti-Corruption Code. First, the Code focuses on whether a person has a "conflict of interest" in dealing with the executive agency. *See* 3 P.R.L.A. § 1883a(h) ("No person shall be involved in matters that could give rise to a conflict of interest or the appearance of a conflict of interest"), § 1883a(n) ("No person shall enter into contracts with executive agencies if there is any conflict of interests. Every person shall certify that he does not represent private interests in cases or matters that involve conflicts of interest, or of public policy, between the executive agency and the private interests he represents"). In § 1883(b), the Anti-Corruption Code defines "conflict of interest" to mean "[a] situation in which a personal or financial interest is or could reasonably be incompatible with the public interest." 3 P.R.L.A. § 1883(b). Again, although it is easy to understand how a person who gains confidential governmental information while working for one executive agency should not gain an unfair advantage by using that same information against

10

the same agency, it is difficult to understand how a person who has no insider information against a particular executive agency should be forbidden from testifying against that agency.

Second, the Anti-Corruption Code contains a detailed definition of "confidential information." *See* 3 P.R.L.A. § 1883(i). But PRASA does not contend that Mr. Iglesias proposes to use any confidential information as defined by the Code in offering his expert opinions against PRASA. *See PRASA's Mot.* ¶¶ 1-12. The Code expressly prohibits a person from using "confidential information acquired in the course or as [a] result of any task entrusted thereto under a contract by the Government of Puerto Rico." 3 P.R.L.A. § 1883a(k); *see also* § 1883a(l). Indeed, all PRASA offers on this point is its conclusory concern that "Mr. Iglesias is getting paid to testify against the same government that pays his employer [and] [t]hus, his conflict of interest goes beyond a mere appearance; it is an unavoidable reality and precisely the conduct that sec. 1883[a](n) of the Anti-Corruption Code prohibits." *PRASA's Mot.* ¶ 12.

Third, while PRASA is correct that the Anti-Corruption Code contemplates the "appearance of a conflict of interest," 3 P.R.L.A. § 1883a(h), the precise language of the statute strongly suggests that its reach is limited to work against the executive agency that hired the person:

> **(n)** No person shall enter into contracts with executive agencies if there is any conflict of interests. Every person shall certify that he does not represent private interests in cases or matters that involve conflicts of interest, or of public policy, between the executive agency and the private interests he represents.

11

3 P.R.L.A. § 1883a(n). The Puerto Rico Legislature was careful to use exact language, forbidding conflicts of interest "between <u>the executive agency</u> and the private interests he represents." *Id.* (emphasis supplied by Court). The statute refers to executive agency in the singular, using the definite article "the," and does not incorporate the statutory definition of executive agencies found in § 1883(a). If the Legislature wished to bar any person who had insider information from work with one agency from working against any other executive agency, it could easily have said so, simply by incorporating the broad definitions of executive agencies in the preceding section. *Compare* 3 P.R.L.A. § 1883a(n) *with* 3 P.R.L.A. § 1883(a). Furthermore, while the Anti-Corruption Code prohibits the appearance of conflicts of interest, *see* 3 P.R.L.A. § 1883a(h), the Court interprets the statute as preventing the appearance of only those conflicts of interest within the meaning set forth in the Anti-Corruption Code.

Finally, while the Legislature's determination to eradicate corruption is laudable, an interpretation of the Anti-Corruption Code as broad as the one urged by PRASA would have the counterintuitive impact of severely limiting the pool of experts available to testify against executive agencies, even where there is no conflict of interest. Aluma makes this point in its opposition. *See Aluma's Opp'n* ¶ 30 ("As a practical matter, PRASA's contention would mean that any professor that works for the University of Puerto Rico could not act as an expert in litigation against any government agency and/or public corporation. It would also mean that [no] law professor in the University of Puerto Rico could . . . represent any party in a litigation

12

against any government agency and/or public corporation.  Neither fact is true or correct.").

In today's world, the interrelationship between the government writ large and experts of all types is so ubiquitous that PRASA's expansive interpretation of the Anti-Corruption Code would eliminate large swaths of potential experts who would otherwise be allowed to testify against the government of Puerto Rico, essentially limiting those who could testify against executive agencies to a miniscule number within Puerto Rico or to experts from outside Puerto Rico.  To eliminate knowledgeable persons to serve as experts in matters concerning all executive agencies would have the countervailing impact of making it more difficult to hold executive agencies accountable when they err, a result seemingly at odds with the Legislature's intent to "eradicate corruption" within the government as a matter of public policy.  *See* 3 P.R.L.A. § 1881.

In short, the Court does not concur with PRASA's unjustifiably overbroad interpretation of the Anti-Corruption Code.  The Court instead agrees with Aluma that because Mr. Iglesias and his firm have not been involved with PRASA and in their service to other executive agencies have garnered no confidential information useful in Aluma's claims against PRASA, there is no conflict of interest under the Anti-Corruption Code that would preclude Mr. Iglesias's testimony in this case.

### B.    Conflicts of Interest Among Expert Witnesses

Section 3.2(c) of the Anti-Corruption Code provides:

> Every person shall observe the precepts and principles of excellence and honesty that cover his profession, in addition to the ethical standards or

rules of the Association or College of which he is a member and that regulate his trade or profession in the relationship with his competitors as well as with the Government of Puerto Rico and its employees or officials.

3 P.R.L.A. § 1883a(c). In this provision, the Anti-Corruption Code incorporates the codes of conduct of the profession or trade of the expert. As Aluma points out, PRASA has pointed to no professional code of conduct that Mr. Iglesias is supposed to have breached. *Aluma's Opp'n* ¶¶ 16-21; 37-50. As such, this provision of the Anti-Corruption Code does not change the Court's conclusion that PRASA's motion in limine seeking to disqualify Mr. Iglesias pursuant to this Code is unavailing.

In sum, the Court concludes PRASA has not established that Dr. Iglesias violated the Anti-Corruption Code and dismisses PRASA's motion in limine to exclude Dr. Iglesias on this basis.

## VI. CONCLUSION

The Court DISMISSES without prejudice PRASA's Motion *in Limine* Re: Disqualification of Carlos Iglesias as Aluma's Financial Expert (ECF No. 634).

SO ORDERED.

                /s/ John A. Woodcock, Jr.
                JOHN A. WOODCOCK, JR.
                UNITED STATES DISTRICT JUDGE

Dated this 24th day of March, 2025