UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

TRAVELERS CASUALTY & SURETY    )
COMPANY OF AMERICA,            )
                               )
   Plaintiff/Counterclaim Defendant,    )
                               )
          v.                 )   No. 3:18-cv-01795-JAW
                               )
ALBERTO VÁZQUEZ-COLON, et al.,  )
                               )
   Defendants/Counterclaim Plaintiffs.   )

## ORDER ON APPEARING DEFENDANTS' MOTION IN LIMINE REGARDING ALUMA'S LIABILITY EXPERT ENGINEER RAFAEL HERNÁNDEZ MOLINA

Two defendants jointly move in limine asking the court to exclude an opposing party's liability expert on the grounds that the expert has a conflict of interest violative of Puerto Rico's Anti-Corruption Code and the opposing party failed to comply with the mandatory disclosure requirements of Federal Rule of Civil Procedure 26. Concluding the defendant has not demonstrated the expert has a conflict under the Anti-Corruption Code and that the opposing party complied with its discovery obligations and that exclusion pursuant to Rule 37(c) is not warranted, the court dismisses the defendants' motion in limine without prejudice.

## I.    BACKGROUND

On March 7, 2025, Puerto Rico Aqueduct and Sewer Authority (PRASA) and Chubb Insurance Company (Chubb) (collectively, the Appearing Defendants) jointly filed a motion in limine to preclude Aluma Construction Corporation (Aluma) from soliciting liability expert testimony from Rafael Hernández Molina at trial set to

commence on April 2, 2025. *Mot.* in Lim. *Re: Aluma's Liability Expert Eng'r Rafael Hernandez Molina* (ECF No. 636) (*Appearing Defs.' Mot.*). On March 14, 2025, Aluma filed its opposition. *Opp'n to Mot. in Lim. Regarding Aluma's Liability Expert Eng'r Rafael Hernandez Molina (Dkt. 636)* (ECF No. 652) (*Aluma's Opp'n*).

## II. OVERVIEW

In 2012, Travelers Casualty & Surety Company of America (Travelers) issued a General Agreement of Indemnity in favor of Aluma and issued surety bonds, securing Aluma's performance and its fulfillment of three construction contracts in Puerto Rico. Travelers was required to pay on the surety bond, indemnified by corporate and individual indemnifiers, and this lawsuit is its attempt to collect from the indemnifiers its surety payment plus costs and expenses. Furthermore, Travelers asserted that it had paid claims from Aluma's subcontractors, workers, materialmen, and others and that Travelers was, therefore, subrogated against PRASA for that amount. Travelers' relatively straightforward claims against the owner of the construction project and the indemnifiers subsequently devolved into a complicated dispute among PRASA, Aluma, and the indemnifiers as to who was responsible for construction delays and cost.

Aluma and the other Defendants/Crossclaimants[1] seek damages for contractual torts, alleging they were induced into a construction contract that was

---

[1]    At the final pretrial conference, the Court asked about the status of several of the parties, who are listed as active parties on the docket but are not represented by counsel. The docket currently lists as Defendants/Crossclaimants: Alberto Vazquez-Colon, Hilda Pineiro-Caceres, Carlos Gonzalez-Torres, Ivette Gomez-Diaz, Miguel Bermudez-Carmona, Aluma Construction Corporation, Vieques Concrete Mix Corporation, Inter-Island Ferry System Corporation, Vieques F.O.&G. Inc., PRASA, Conjugal Partnership Vazquez-Pineiro, Conjugal Partnership Gonzalez-Gomez. After some discussion, the parties suggested that some of the individuals and entities should no longer be parties

negligently designed and managed by PRASA.  In the alternative, Aluma seeks damages pursuant to the terms of the contract for unpaid costs and/or damages caused by the numerous change orders and different site conditions in the project site.  Chubb, a third-party defendant, is an insurer of PRASA.  The only pending matter concerning Travelers is the imposition of attorney's fees and costs, and interest on the debt.

## III.  THE PARTIES' POSITIONS

### A.    PRASA and Chubb's Joint Motion in Limine

The Appearing Defendants' motion in limine begins by asserting that "Aluma has announced its intention to call as a liability expert Eng[ineer] Rafael Hernández Molina, who has not been authorized by the Court, and for whom Aluma has not made the mandatory disclosures required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure." *Appearing Defs.' Mot.* at 1.  PRASA and Chubb accordingly move the Court to order "that this purported expert be fully precluded from testifying in the jury trial scheduled to begin on April 2, 2025." *Id.*

The motion in limine explains that on June 2, 2023, Aluma filed an informative motion that its original liability expert, Rafael Pérez Jiménez, had unfortunately passed away.  *Id.* (discussing *Informative Mot.* (ECF No. 555) (*June 2, 2023 Informative Mot.*)).  The Appearing Defendants state further that, at that time, Aluma informed the parties and the Court that it had retained Engineer Carlos

---

to the case.  The Court instructed the parties to file an update as to the status of all the parties, except for those represented at the final pretrial conference, by February 26, 2025.  As of the date of this order's docketing, no such informative motion has been filed.

Pesquera as a substitute for Mr. Pérez, and "without producing a Rule 26 report, requested that defendants not be allowed to depose him." *Id.* at 1-2. The Appearing Defendants note that they filed two objections. *Id.* at 2 (discussing *Opp'n to Aluma's Informative Mot. at Docket 555* (ECF No. 556); *Supplemental Mot. to ECF 556 (Opp'n to Aluma's Informative Mot. at Docket 555)* (ECF No. 557)).

Approximately three months later, on August 23, 2023, the Appearing Defendants recount that Aluma filed another informative motion, this time stating its intention to replace Mr. Pesquera with Engineer Rafael Hernández Molina due to a conflict of interest on the part of Mr. Pesquera. *Id.* (discussing *Informative Mot.* (ECF No. 563) (*Aug. 23, 2023 Informative Mot.*)). Appearing Defendants say that Aluma's August 23, 2023 informative motion states that Mr. Hernández "*endorses Professor Jimenez [rip] and will testify to its validity.*" *Id.* (citing *Aug. 23, 2023 Informative Mot.*) (emphasis and alteration made by Appearing Defendants). The motion in limine reports that "[a]lthough Aluma produced a copy of Eng. Hernández's alleged qualifications, the rest of the information required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure was not disclosed," and "Aluma opposed any attempt to depose Eng. Hernández." *Id.* Appearing Defendants say that, in response, PRASA argued that if the Court allowed Mr. Hernández to serve as Aluma's liability expert, then all Rule 26 disclosures must be made, and Appearing Defendants must be allowed to conduct a deposition. *Id.* (discussing *Opp'n to Aluma's Informative Mot. at Docket 563*).

Appearing Defendants say Aluma filed an additional informative motion on September 8, 2023, stating, in its entirety, that "Eng. Rafael A. Hernández Molina has never acted as an expert witness [and] [f]urthermore, he has no publications." *Id.* (quoting *Informative Mot.* (ECF No. 565) (*Sept. 8, 2023 Informative Mot.*)). Aluma then produced a letter from Mr. Hernández "'adopting by reference the late Dr. Jimenez's opinion on the events related to this case'; however," Appearing Defendants challenge, "that letter did not comply with the requirements of Rule 26(a)(2)(B) as it failed to include a complete statement of all his opinions and their basis, and facts and data considered by him, or what exhibits the expert would present at trial." *Id.*

They report that on March 11, 2024, the Court observed "the case [has] bec[o]me enmeshed in a cycle of motions for reconsideration" and ordered, "[t]o clear the docket and avoid having old, and perhaps moot, matters lingering, the Court is dismissing all motions related to Aluma's expert designation. The Court does so without prejudice so that if the Court retains the case on its docket, the partes may refile their positions, if necessary, on Aluma's expert designation and the need for discovery." *Id.* at 2-3 (quoting *Order Dismissing Informative Mots.* (ECF No 579)). "To this day," Appearing Defendants say, "Aluma has not filed any motion renewing [its] request to allow Eng. Hernández as [its] new liability expert." *Id.* at 3.

Appearing Defendants complaint that, without first requesting leave from the Court to allow Mr. Hernández as their new liability expert, Aluma "announced Eng. Hernández as one of its experts in the Proposed Pretrial Order" by stating:

> [Eng. Hernández] "*will* testify about Aluma's losses, caused by the project in question. He will explain how improbable it is to have so many

5

DSCs in such a limited project, particularly such a simple one. He will testify about all aspects of the case that have to do with losses or damages, as they reflect the conditions on the field, **He will identify his report**, which he hereby adopts by reference, **and his rebuttal to PRASA's expert's report**, and will point out and correct the second's "misunderstandings" about the contract and how the costs can escalate in a properly organized and controlled construction. Also, he will explain how the absurdly large number of DSC reflect poor data gathering before the design and how it affects the efficiency possible during construction and the related costs. He will testify to all the important aspects of **his report but will not limit his testimony to the contents of his report. He will rebut the incorrect opinions expressed by PRASA's experts**."

*Id.* (citing and then quoting *Joint Proposed Pre-Trial Mem. and Schedule* at 152-53 (ECF No. 620) (Appearing Defendants' emphasis).

Appearing Defendants raise two issues: first, that Aluma presented Mr. Hernández as its expert without first requesting, or being granted, leave to do so, and, second, that Mr. Hernández's original report and his rebuttal report, both of which Aluma alludes to in the joint proposed pre-trial memorandum, "have never been disclosed to the appearing defendants." *Id.* at 4. PRASA and Chubb note that Dr. Jiménez "never issued a *rebuttal* report questioning the conclusions of PRASA's liability expert." *Id.* at 4 n.3 (Appearing Defendants' emphasis). Appearing Defendants point out that they objected to the designation of Mr. Hernández as Aluma's expert in the same pre-trial memorandum where Aluma first disclosed their intent to call Mr. Hernández as an expert witness. *Id.* (citing *Joint Proposed Pre-Trial Mem. and Schedule* at 159).

Further, Appearing Defendants report that the Court "meticulously went through all pending matters" at the February 21, 2025 final pre-trial conference, and

when the Court asked Aluma directly if there were any pending matters related to discovery, Aluma "never mentioned anything about Eng. Hernández and flatly answered the only pending issue was the possible deposition of newly designated financial expert CPA Carlos Iglesias." *Id.*

Appearing Defendants remind the Court that "[f]or similar reasons, Aluma had to withdraw the experts that were originally announced to prove liability and damages (Eng. Rafael Perez and CPA Armando Suarez, respectively)." *Id.*

They add that, after the Court issued its March 11, 2024 order dismissing multiple informative motions concerning Aluma's liability expert, "Aluma **decided** to not request leave from the Court to allow Eng. Hernández as [its] new liability expert; it would be ludicrous for them to argue that the mere mention of his name in the Pretrial report constitutes that request." *Id.* at 5 (Appearing Defendants' emphasis). "[D]ue to its decision to not request leave to use Eng. Hernández as their liability expert at trial," Appearing Defendants argue that "Aluma failed to place the Court in a position to properly assess the situation and, if deemed appropriate, order that all Rule 26 disclosures related to Eng. Hernández be timely made so that defendants could timely prepare for trial." *Id.* They contend Aluma's behavior to this end may have been "deliberate[]," and characterize their late request as "trial by ambush, because it means defendants will be required to participate in a trial that starts in three weeks without having had an adequate opportunity to prepare for it." *Id.* at 6-7.

In a brief footnote, Appearing Defendants also report that Mr. Hernández is currently serving as an expert for the Puerto Rico Ports Authority in a pending litigation and contend "[t]herefore, Eng. Hernández has a conflict of interest under the '*Anti-Corruption Code For The New Puerto Rico*' 3 PRLA sec. 1881 *et seq.*" *Id.* at 2 n.2. "To avoid being repetitive," Appearing Defendants say that they "hereby adopt the argument presented in their motion to exclude CPA Carlos Iglesias for a similar conflict of interest." *Id.* (discussing *Mot.* in Lim. *Re: Disqualification of Carlos Iglesias as Aluma's Fin. Expert* (ECF No. 634) (citation provided by Court)).

Appearing Defendants conclude by moving the Court to strike Mr. Hernández as Aluma's liability expert and preclude him from rendering any testimony at trial. *Id.* at 7.

## B.   Aluma's Opposition

Aluma contends PRASA's request in its motion in limine "is disingenuous at best, and an abuse of [] process at worst." *Aluma's Opp'n* ¶ 7. It insists, "[a]s admitted by PRASA [and Chubb] in [their] Motion in Limine, Aluma announced Hernandez over a year ago because the prior liability expert passed away," *id.* (citing *June 2, 2023 Informative Mot.*; *Aug. 23, 2023 Informative Mot.* (citations corrected)), and "[a]t no time did Aluma understand the Court's Order on Docket 579 to mean that Aluma had to announce the witness again for a second time." *Id.* ¶ 8. Aluma reports it understood the Court's order "to mean that PRASA had to raise its objections and requests for depositions again since that was the pending controversy at the time." *Id.* Aluma argues further that its decision to change its expert was "not due to

capriciousness," but out of necessity "***because the prior expert had*** <u>***passed away***</u>." *Id.* ¶ 9 (Aluma's emphasis). They state further that they disclosed Mr. Hernández's credentials when they substituted him for Mr. Pesquera. *Id.*

Regarding the Appearing Defendants' contention that they have not received an expert report from Mr. Hernández, Aluma contends that Mr. Hernández "also announced that he had reviewed the report prepared by the prior expert and the underlying data, and ***<u>adopted the report and the opinions therein as his own.</u>*** Aluma was obviously referring to said report when it referenced a report in the Pre-Trial Report." *Id.* ¶ 11 (Aluma's emphasis). As to the joint proposed pre-trial memorandum's statement that Mr. Hernández had additionally authored a rebuttal report, Aluma says this "is an unintended error which will be corrected in the Pre-Trial Report." *Id.*

Turning to its legal arguments, Aluma asserts that the First Circuit "has repeatedly held that cases should be entertained on the merits," and "has been consistent in ruling that an expert witness will not be disqualified for a technical or harmless error," stating specifically "[c]ourts are allowed to '*admit belatedly proffered expert evidence if the proponent's failure to reveal it was either substantially justified or harmless.*'" *Id.* ¶¶ 19-20 (citing *Malot v. Dorado Beach Cottages Assocs.*, 478 F.3d 40, 43 (1st Cir. 2007); *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (citation corrected)) (Aluma's emphasis). Aluma insists its approach in this case is substantially justified and harmless and, further, should not come as a surprise to

PRASA or Chubb based on its announcement of Mr. Hernández "over a year ago." *Id.*
¶¶ 21-26 (collecting cases).

As to the Appearing Defendants' argument that Aluma did not comply with
the requirements of Rule 26(a)(2)(B) by failing to disclose a complete statement of all
Mr. Hernández's opinions and their basis, and facts and data considered by him,
Aluma rejects this argument as "an obstinate refusal to see the obvious—that
Hernandez reviewed the same data available to the prior expert and decided to adopt
his finding, conclusions, and report as his own." *Id.* ¶¶ 27-28.  They emphasize that
this informative motion was docketed not "recently, but over a year ago." *Id.* ¶ 29.

## IV.  LEGAL STANDARD

"Federal Rule of Civil Procedure 26 requires that a party seeking to admit
expert witness testimony in federal court submit 'a written report' that 'must contain'
certain information, such as 'a complete statement of all opinions the witness will
express.'" *Martinez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022) (quoting FED. R.
CIV. P. 26(a)(2)(B))).  Pursuant to Rule 26(a)(2)(D), an expert witness and his report
must be disclosed "at the times and in the sequence that the court orders."  FED. R.
CIV. P. 26(a)(2)(D); *accord Robles-Figueroa v. Presbyterian Cmty. Hosp., Inc.*, 2025
U.S. Dist. LEXIS 13215, at *5 (D.P.R. Jan. 24, 2025).  "Absent stipulation or a court
order, expert testimony 'intended solely to contradict or rebut evidence on the same
subject matter identified by another party' must be disclosed 'within 30 days after the
other party's disclosure.'"  *Robles-Figueroa*, 2025 U.S. Dist. LEXIS 13215, at *5

(quoting FED. R. CIV. P. 26(a)(2)(D)). Rule 26 further requires a witness providing an expert report to disclose:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii)    the facts or data considered by the witness in forming them;

(iii)   any exhibits that will be used to summarize or support them;

(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi)    a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)-(vi).

Rule 26(a) governs "required disclosures." *See* FED. R. CIV. P. 26(a). Under Federal Rule of Civil Procedure 37(c)(1), a party's failure to disclose information or identify a witness as required by Rule 26(a) will normally result in the party being barred from using that information or witness at the trial, unless the failure was substantially justified or is harmless. FED. R. CIV. P. 37(c)(1); *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) ("[T]he required sanction in the ordinary case is mandatory preclusion"). Courts may excuse a failure to disclose where the failure is justified or harmless, *see* FED. R. CIV. P. 37(c)(1), but the court must bear in mind the intent of the disclosure rules "to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Poulis-Minott*, 388 F.3d at 358.

11

## V.    DISCUSSION

Appearing Defendants' motion in limine to exclude Aluma's liability expert rests on two claims: first, that Aluma violated its discovery obligations and, second, that the expert's testimony would violate the Anti-Corruption Code for the New Puerto Rico, 3 P.R.L.A. § 1881 *et seq.* (Anti-Corruption Code). The Court addresses the second argument first.

### A.    Exclusion for Alleged Anti-Corruption Code Violation

Appearing Defendants' second argument, that Mr. Hernández should be excluded based on an alleged violation of the Anti-Corruption Code, is not availing. Appearing Defendants raise this argument in a brief footnote and point the Court towards PRASA's motion in limine to strike Aluma's financial expert, Mr. Iglesias Colon, on the same grounds. *See Mot.* in Lim. *Re: Disqualification of Carlos Iglesias as Aluma's Fin. Expert* (ECF No. 634). In the Court's March 24, 2025 order on that motion in limine, *Order on PRASA's Mot. in Lim. to Exclude Carlos Iglesias Colon as Aluma's Fin. Expert* (ECF No. 677) (*Order on Mot. in Lim. to Exclude Iglesias*), the Court wrote the first question in determining whether an expert has violated the Anti-Corruption Code based on an alleged conflict of interest is whether PRASA fits within the Anti-Corruption Code's definition of "executive agencies":

> The bodies and entities of the Executive Branch of the Government of Puerto Rico, including public corporations, departments, agencies, offices, municipalities, or other instrumentalities.

3 P.R.L.A. § 1883(a). Based on the parties' recent stipulation that "PRASA is [a] public corporation of the Commonwealth with juridical personality to sue and be

sued," the Court determined it had no basis to conclude that PRASA is not a public corporation falling within the Anti-Corruption Code's definition of "executive agency." *Order on Mot. in Lim. to Exclude Iglesias* at 8 (quoting *Mot. to Submit Proposed Jury Instructions Agreed by Aluma, PRASA and Chubb* at 16 (ECF No. 666)).

Next, the Court considered PRASA's assertion that the Anti-Corruption Code mandates that if an expert witness does any work for any executive agency of the commonwealth of Puerto Rico, the expert is barred from testifying against any other Puerto Rican executive agency. *Id.* at 9. As explained in that order, the Court analyzed the Anti-Corruption Code and concluded that PRASA's position was not justified by the statutory language. *Id.* at 9-12. The Court further concluded that PRASA's statutory interpretation was overly broad to the point of being impracticable, as it would prevent a multitude of professionals within Puerto Rico without a legitimate conflict from serving as expert witnesses against its executive agencies, and would therefore be inconsistent with the Puerto Rico Legislature's declaration that the Anti-Corruption Code was designed to "eradicate corruption." *Id.* at 9-13 (quoting 3 P.R.L.A. § 1881 (stating further, "[z]ero tolerance for corruption is hereby declared as public policy")). Finally, in that order, the Court concluded that because Mr. Iglesias and his firm have not been involved with PRASA and in their service to other executive agencies have garnered no confidential information useful in Aluma's claims against PRASA, there is no conflict of interest under the Anti-Corruption Code that would preclude Mr. Iglesias's testimony in this case. *Id.* at 13.

13

The Court reaches the same conclusion here. In its motion in limine seeking to disqualify Mr. Hernández, PRASA briefly alleges in a footnote that Mr. Hernández is currently serving as an expert for the Puerto Rico Ports Authority in a pending litigation and contends "[t]herefore, Eng. Hernández has a conflict of interest under the '*Anti-Corruption Code For The New Puerto Rico*' 3 PRLA sec. 1881 *et seq.*" *PRASA's Mot.* at 2 n.2. Aluma did not respond to PRASA's allegation regarding Mr. Hernández's Anti-Corruption Code violation. *Aluma's Opp'n* ¶¶ 1-36.

First, the Court restates its conclusion, for the reasons explained in its order on PRASA's motion in limine regarding Mr. Iglesias and also discussed in this order, that PRASA is an "executive agency" within the meaning of the Anti-Corruption Code. Second, the Court concludes PRASA's assertion that Mr. Hernández must be excluded merely because he is serving as an expert for a different executive agency, the Puerto Rico Ports Authority, does not amount to a "conflict of interest" under the statute. PRASA makes no allegation that Mr. Hernández has any involvement with PRASA or has garnered any confidential information regarding PRASA. This is not a conflict of interest under the Anti-Corruption Code that would prevent Mr. Hernández's testimony in this case, and the Court does not grant PRASA's motion in limine to exclude Aluma's expert on this basis.

## B.    Exclusion for Discovery Violation

Appearing Defendants alternatively argue Mr. Hernández must be excluded from the upcoming trial because Aluma failed to comply with its expert disclosure obligations pursuant to Federal Rule of Civil Procedure 26. They explain that, after

the Court's March 11, 2024 order dismissing multiple pending motions regarding Aluma's new liability expert and inviting the parties to refile motions regarding any outstanding matters, *id.* at 2-3 (quoting *Order Dismissing Informative Mots.*), the next mention of Mr. Hernández was in the parties' joint proposed pretrial memorandum, docketed on February 19, 2025. *Id.* at 3 (citing *Joint Proposed Pre-Trial Mem.* at 152-53). Appearing Defendants contend that Aluma neither requested nor received leave to inform the Court that Mr. Hernández was their liability expert witness, and, further, that neither Mr. Hernández's original nor rebuttal report, both of which Aluma alludes to in the joint proposed pre-trial memorandum, has ever been disclosed to them. *Id.* at 4. Appearing Defendants note that they objected to the designation of Mr. Hernández as Aluma's expert in the same pre-trial memorandum, which was their earliest opportunity to do so. *Id.* (citing *Joint Proposed Pre-Trial Mem.* at 159). Aluma disagrees, saying, first it "promptly provided" Mr. Hernández's resume and engagement letter when PRASA recently asked for the same materials, *Aluma's Opp'n* ¶ 12, and, notwithstanding the Court's March 11, 2024 order, all parties had access to Mr. Hernández's credentials when Aluma announced him as a substitute expert. *Id.* ¶ 9. Second, Aluma insists Mr. Hernández "also announced that he had reviewed the report prepared by the prior expert and the underlying data, and ***adopted the report and the opinions therein as his own***," adding "Aluma was obviously referring to said report when it referenced a report in the Pre-Trial Report." *Id.* ¶ 11 (Aluma's emphasis). Aluma says it "never understood that the

Court would require it to announce [its] intention to utilize Hernandez a second time after the Court's Order at Dkt. 579." *Id.* ¶ 34.

The Court is not persuaded by the Appearing Defendants' argument. It is true that the Court's March 11, 2024 order dismissed the pending informative motions without prejudice in order "[t]o clear the docket and avoid having old, and perhaps moot, matters lingering." *Order Dismissing Informative Mots.* at 2-3. But, as the order's language indicates, the primary reason for the dismissals was that this case, which had been pending since October 22, 2018, had become bogged down in motion practice. *Id.* at 2. The Court pointed to Travelers' motion for reconsideration of the Court's second order on the motion for reconsideration that had been filed on February 21, 2024. *See id.* (citing *Travelers' Mot. for Recons. of Second Order on Mot. for Recons.* (ECF No. 577)). The Court's March 11, 2024 order was intended to clean up the cluttered docket, not indicate a ruling on the merits as to any of Aluma's informative motions regarding Mr. Hernández.

Nevertheless, the Appearing Defendants seize upon the final two sentences in the March 11, 2024 order:

> To clear the docket and avoid having old, and perhaps moot, matters lingering, the Court is dismissing all motions related to Aluma's expert designation. The Court does so without prejudice so that if the Court retains this case on its docket, the parties may refile their positions, if necessary, on Aluma's expert designations and the need for discovery.

*Id.* at 2. The background of this part of the order was that the Court was then considering whether—if Travelers were dismissed from the case—the case should be

remanded to Puerto Rico state court, hence the reference to "if the Court retains this case on its docket." *Id.*

The language, "the parties may refile their positions," contemplated that either Aluma or the Appearing Defendants could file motions related to Aluma's designation of Mr. Hernández as an expert if they elected to do so. The Court did not intend these sentences to suggest that Aluma must refile its motions on pain of exclusion of Mr. Hernández as its expert. Instead, Aluma could—as it chose to do—stand on the adequacy of its expert disclosures. Similarly, if the Appearing Defendants had wished to obtain a formal ruling on Mr. Hernández's designation or their right to expert discovery, they could have filed an appropriate motion. They did not until the eve of trial. In any case, contrary to the Appearing Defendants' argument, the Court did not intend its March 11, 2024 order to have a preclusive effect on Aluma's right to call Mr. Hernández as an expert witness.

The Court turns to the six motions it dismissed in its March 11, 2024 order. From June 2, 2023 through September 15, 2023, Aluma filed five informative motions and one explanation. *See Informative Mot.* (ECF No. 555) (*June 2, 2023 Informative Mot.*); *First Suppl. Mot. to Informative Mot. at ECF 556* (ECF No. 557); *Informative Mot.* (ECF No. 563) (*Aug. 23, 2023 Informative Mot.*); *Informative Mot.* (ECF No. 565) (*Sept. 8, 2023 Informative Mot.*); *Informative Mot.* (ECF No. 566) (*Sept. 14, 2023 Informative Mot.*); *Alumas Explanation to its Opp'n to the Taking of Substitute Expert's Dep., Proposing Compromise and Reporting that the Info. Demanded by PRASA has been Provided* (ECF No. 567) (*Aluma Reply*).

The first informative motion, dated June 2, 2023, informed the Court that Dr. Jiménez had passed away and Aluma had obtained a substitute expert, Engineer Carlos I. Pesquera, Ph.D. *June 2, 2023 Informative Mot.* at 1-2. Chubb objected to Aluma's designation of Dr. Pesquera on June 5, 2023. *Opp'n to Aluma's Informative Mot. at Docket 555* at 1-3 (ECF No. 556). However, on June 7, 2023, PRASA filed a response to Aluma's designation of Dr. Pesquera that revealed that he had acted as a contractor for PRASA, thereby creating a conflict of interest. *Suppl. Mot. to ECF 555 (Opp'n to Aluma's Informative Mot. at Docket 555)* (ECF No. 557).

On August 23, 2023, Aluma filed a second informative motion, this rescinding the designation of Dr. Pesquera due to PRASA's conflict of interest objection and designating Eng. Rafael A. Hernández Molina as its new liability expert. *Aug. 23, 2023 Informative Mot.* at 1-3. Further, Aluma said that "[l]ike Mr. Pesquera, [Mr. Hernández] endorses Professor Jimenez'[s] Opinion and will testify to its validity, just like Professor Jimenez would have." *Id.* at 2. Aluma attached Mr. Hernández's resume. *Id.*, Attach. 1, *Hernández Molina Resume*. Aluma also objected to Chubb and PRASA's anticipated position that they should have the right to depose Mr. Hernández. *Aug. 23, 2023 Informative Mot.* at 2. Once Aluma designated Mr. Hernández on August 23, 2023, the informative motion regarding Dr. Pesquera, and the Chubb and PRASA objections to Dr. Pesquera, became moot and there was no need for any party to respond further.

Also on August 23, 2023, Chubb and PRASA filed an immediate joint response to Aluma's designation of Mr. Hernández, demanding that Mr. Hernández produce a formal report instead of adopting Dr. Jiménez's report and further demanding that they be allowed to depose Mr. Hernández. *Opp'n to Aluma's Informative Mot. at Docket 563* at 1-3 (ECF No. 564) (*Chubb/PRASA Resp.*). Specifically, Chubb and PRASA objected on the ground that Aluma's designation of Mr. Hernández violated Federal Rule of Civil Procedure 26(a)(2)'s expert disclosure requirements. *Id.* at 2. They specifically noted that Rule 26 requires the proponent of an expert to disclose a "list of cases in which he has testified during the last 4 years." *Id.*

On September 8, 2023, Aluma filed a fourth informative motion confirming that Mr. Hernández had never previously testified as an expert and has no publications. *Sept. 8, 2023 Informative Mot.* at 1. Then, on September 14, 2023, Aluma filed a fifth informative motion, attaching a letter in which Mr. Hernández expressly adopted the contents of Dr. Jiménez's report. *Sept. 14, 2023 Informative Mot.* at 1, Attach. 1, *Letter from Rafael A. Hernández Molina, PE* (*Hernández Molina Letter*). On September 15, 2023, Aluma made another filing objecting to PRASA's demand that it be allowed to depose Mr. Hernández. *Aluma Reply* at 1-6.

In light of this history, it strikes the Court that the Appearing Defendants' pending motion in limine concerning Mr. Hernández attempts to create an issue where there is none. The Court accepts neither the argument that Aluma committed a discovery violation, nor that PRASA and Chubb are surprised or disadvantaged by Mr. Hernández's designation as its liability expert.

Indeed, this case has been pending in this court since October 22, 2018, *Compl.* (ECF No. 1), and "[t]he discovery phase . . . concluded on November 6, 2020." *Order: Denying Joint Informative Mot. Regarding to Disc.* (ECF No. 352). Although the rules once required that the parties file discovery with the court, this requirement has long since been abandoned. *See* P.R. LOC. R. 26(a) (**Filing of Disc.**). Now, Federal Rule of Civil Procedure 26(a)(2)(A) mandates only that "a party must disclose to <u>the other parties</u> the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A) (emphasis supplied by the Court). Thus, whether a party has complied with the expert designation requirements is ordinarily a matter between the parties, unless there is a discovery dispute, which must be handled pursuant to Local Rule 26(b). P.R. LOC. R. 26(b). After discovery closed in this case in late 2020, the parties engaged in extensive dispositive motion practice, resulting in Judge Gelpí's omnibus order dated September 15, 2021. *Omnibus Opinion & Order* at 1-53 (ECF No. 440). After Judge Gelpí rejected several motions for reconsideration, the parties filed a pretrial memorandum on November 12, 2021. *Joint Proposed Pre-Trial Mem. and Schedule* (ECF No. 465). In the November 12, 2021 pretrial memorandum, Aluma listed Rafael Pérez Jiménez, Ph.D. as an expert and set forth a synopsis of his expert opinions. *Id.* at 139. Significantly, neither PRASA nor Chubb objected to Professor Jiménez as an expert witness for Aluma, and made no claim that Aluma had committed a discovery violation in listing Dr. Jiménez. *Id.* at 143.

After the November 12, 2021 pretrial memorandum, the case fell into a black hole for years as the Court wrestled with countless motions for reconsideration related to Travelers' role in the case. When Professor Jiménez died, it became necessary for Aluma to obtain a replacement. As discussed above, Aluma first notified the Court and counsel of Professor Jiménez's death and the initial substitute expert on June 2, 2023. Once Dr. Pesquera was disqualified, Aluma informed PRASA and Chubb of Mr. Hernández's designation as an expert on August 23, 2023 and supplemented information about Mr. Hernández, ending in September 2023.

The Court has no quibble with Aluma's decision to file informative motions about its substitute experts in 2023. *United States v. Puerto Rico*, 398 F. Supp. 3d 1, 1 (D.P.R. 2019) (the purpose of an informative motion is to "inform"). As pointed out earlier, expert designations are ordinarily a matter between the parties, but Aluma had listed Dr. Jiménez as its expert in the November 12, 2021 pretrial memorandum, and it was therefore proper for Aluma to supplement its contents.

Nor is the Court disturbed by Aluma's compliance with its Rule 26(a)(2) expert disclosures concerning Mr. Hernández. Under Federal Rule of Civil Procedure 26(a)(2)(C), an expert witness is not required to provide an expert report, and, in the absence of such a report from Mr. Hernández, his adoption of Dr. Jiménez's report is, in the Court's view, sufficient to comply with the disclosure requirements of Rule 26(a)(2)(C)(i)(ii). Thus, in the Court's view, Aluma complied with its Rule 26(a)(2)(B)(i)-(iii) obligations by telling PRASA and Chubb that Mr. Hernández adopted Mr. Jiménez's report, *Sept. 14, 2023 Informative Mot.*, and attaching a letter

from Mr. Hernández stating "[a]fter studying the report and related documents considered by Dr. Jimenez, as can be surmised from his report, . . . [Mr. Hernández] can assert that [he] agree[s] entirely with Dr. Jimenez['s] opinions, as expressed in said report." *Hernández Molina Letter* at 1. Further, Aluma complied with Rule 26(a)(2)'s mandatory disclosure requirement when it shared Mr. Hernández's resume, said he had not been a witness before (and thus could not provide "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," as Rule 26(A)(2)(B)(v) requires), and that he did not have any publications (and thus similarly did not have "a list of all publications authored in the previous 10 years" to provide to PRASA and Chubb, as required by Rule 26(a)(2)(B)(iv)). *See* FED. R. CIV. P. 26(a)(2)(B)(iv), (v).

Although it is somewhat unconventional for one expert to adopt wholesale another's report, the Court concludes that Aluma substantially complied with Rule 26 and that any slight deviation arising from the unique procedural history of this case did not amount to prejudice to PRASA. The bottom line is that both PRASA and Chubb knew as of September 2023 that Aluma intended to call Mr. Hernández as an expert, were aware of his qualifications, and were informed that he had adopted Dr. Jiménez's expert report as his own. PRASA and Chubb's objections in 2023 to Aluma's substitution of Mr. Hernández for the late Dr. Jiménez have the earmarks of an attempt to gain a legal advantage from the untimely death of Dr. Jiménez. Taking a step back, it is well established that "[t]he sole purpose of discovery is to assist trial preparation." *United States v. Kravetz*, 706 F.3d 47, 54-55 (1st Cir. 2013).

In deciding whether the rules of discovery have been violated, a court may look at the course of dealings among the parties during the litigation. Here, as the Court recently pointed out, "the parties did not avail themselves of the opportunity to depose expert witnesses when given the chance." *Order on Mot. for Leave to Depose Expert* at 1 (ECF No. 640). Thus, PRASA and Chubb knew in the summer of 2023 and know now about Mr. Hernández exactly what Aluma, PRASA, and Chubb know about all the expert witnesses. *United States v. Puerto Rico*, 398 F. Supp. 3d 1 (D.P.R. 2019). In short, Aluma's disclosure complies with the purpose of Rule 26 "to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Poulis-Minott*, 388 F.3d at 358.

The Court is not impressed with PRASA and Chubb's cries of trial by ambush, because the same could be said of all experts in this case, the only differentiation between Mr. Hernández and the remaining experts being that his predecessor expert died.

As a final note, the Court reminds the parties that, under the law of the First Circuit, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is definitive. *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018). In general, "[p]retrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved." *Id.* (citing FED. R. EVID. 103 advisory committee's note to 2000 amendment); *see also Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been

an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

## VI.    CONCLUSION

The Court DISMISSES without prejudice PRASA and Chubb's Motion *in Limine* Re: Aluma's Liability Expert Engineer Rafael Hernandez Molina (ECF No. 636).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2025